ROMANIAN AMERICAN INTERESTS, INC., Appellant, v ROBERT A. SCHER, Respondent.

Second Department, July 11, 1983

APPEARANCES OF COUNSEL

*Weg, Myers & Jacobson, P. C. (Frank A. Weg* and *Mark L. Friedman* of counsel), for appellant.

*Scher & Eliasberg, P. C. (Robert A. Scher, pro se* of counsel), for respondent.

**OPINION OF THE COURT**

MOLLEN, P. J.

In this action, plaintiff seeks to recover damages from its former attorney for legal malpractice arising out of his handling of a prior lawsuit. The primary issue on this appeal concerns which of the two parties bears the burden of proof on the question of the viability of affirmative defenses raised against the plaintiff in the prior action. We turn first to a brief review of the facts.

Plaintiff owned two buildings which were damaged by fire. When its insurance carriers rejected its claims, plaintiff retained defendant as counsel and commenced an action against the carriers. The action was ultimately dismissed for failure to prosecute. No pretrial discovery had been conducted in connection with the case. Following the dismissal of its complaint against the carriers, plaintiff commenced this action against the defendant to recover damages for legal malpractice.

At trial of the legal malpractice action, the court granted the defendant's motion for a directed verdict after the close of the plaintiff's case. The court held that the plaintiff had failed to establish either the terms of the policies in question or the extent of its loss. Plaintiff now appeals from the dismissal of its complaint.

As to the terms of the policies, we disagree with Trial Term's conclusion and find that plaintiff's proof was sufficient. The existence of the policies themselves was never seriously questioned at trial and, indeed, was admitted in the carriers' pleadings in the underlying action. Moreover the provisions of a standard fire policy are prescribed by statute (see Insurance Law, § 168), and are deemed to be included in every policy whether or not expressly set forth (see Insurance Law, § 143; see, also, *Bersani v General Acc. Fire & Life Assur. Corp.,* 36 NY2d 457, 460; *Fischer v Metropolitan Life Ins. Co.,* 167 NY 178, 183).

As to the extent of loss, however, we agree that plaintiff's proof was insufficient except insofar as it related to a bar and grill located in one of the buildings. That bar and grill was covered by a "contents" policy and, in the underlying action, plaintiff's fifth cause of action sought to recover under that policy for damages to the contents of the bar. At trial in the instant action, plaintiff offered expert testimony that the "dollar loss sustained" for the bar and grill was $7,662. Such evidence was sufficient to establish the extent of the loss to the bar and grill (see *Jenkins v Etlinger,* 55 NY2d 35).

Insofar as any claimed loss pertaining to the buildings is concerned, the sole proof received in evidence was testimony as to the cost and value of the buildings prior to the fire; there was no evidence as to the cost of repairs necessitated by the fire or as to the value of the buildings after the fire. The court properly denied plaintiff's request to introduce into evidence, as records kept in the regular course of business of the New York Board of Fire Underwriters, certain reports of Winchester Associates, Inc., prepared at the request of the board and found in the board's files (CPLR 4518, subd [a]). Although Dennis Perlbert, a partner in the law firm which represents the board, testified that the reports were maintained by the board in the

ordinary course of its business, the fact is that the reports were not prepared by the board but by an employee of Winchester Associates, Inc., an independent adjuster. Further, it is stated in these documents that the reported estimates of sound value and of the cost of repairs were made by still another firm, Gabler Construction Co., Inc. "[T]he mere filing of papers received from other entities, even if they are retained in the regular course of business, is insufficient to qualify the documents as business records" (*Standard Textile Co. v National Equip. Rental*, 80 AD2d 911). Under these circumstances, the trial court did not err in refusing to admit the reports in question into evidence.

We address the burden of proof issue, which appears to be one of first impression in this State.

In their answer in the underlying action, the carriers asserted three affirmative defenses. The first alleged that the fires were caused by or at the request of the plaintiff itself. The second alleged that, after the fires, the plaintiff knowingly made false and fraudulent representations to the carriers in violation of the terms of the policies. The third alleged that there was "a failure in party-plaintiffs". The defendant now contends that dismissal of the plaintiff's complaint was proper, not only for the reasons specified by the trial court, but also because the plaintiff offered no evidence at trial that the carriers' affirmative defenses in the underlying action could have been rebutted.

The defendant argues that a plaintiff can succeed on a claim of legal malpractice only by showing that, were it not for his attorney's negligence, he would have prevailed in the underlying action and been awarded a collectible judgment (see, e.g., *Garguilo v Schunk*, 58 AD2d 683; *Carpenter v Weichert*, 51 AD2d 817, 818, mot for lv to app den 39 NY2d 708; *Titsworth v Mondo*, 95 Misc 2d 233, 244). Relying on the fact that a cause of action cannot succeed if met by a successful affirmative defense, the defendant contends that, as part of a plaintiff's prima facie case for legal malpractice, he bears the burden of proving that the underlying action would not have been defeated by any affirmative defense. We disagree.

The question of which party bears the burden of proof as to a particular factual issue is often determined by the

dictates of public policy. One authority has identified three factors to be weighed in determining the appropriate allocation of burdens of proof: (1) inconvenience of proof, especially where evidence is within the "peculiar knowledge or control" of a party; (2) "fairness"; and (3) a "judicial estimate of the probabilities", which may lead a court to fix the burden of proof upon the party asserting the occurrence of an uncommon event (McCormick, Evidence [2d ed], § 337). With these factors in mind, we conclude that the burden of proof on the issue of the viability of affirmative defenses raised in the underlying action is properly borne by the defendant attorney.

The mere fact that an affirmative defense is asserted in an answer does not necessarily mean that it will be pursued at trial, nor does it suggest the nature or quality of proof that will be offered in support of the defense. Placing the burden of proof on the plaintiff, however, would give rise to an unwarranted presumption that all affirmative defenses in the underlying action would have been fully pursued at trial and it would require that the plaintiff produce both the evidence that would have been presented against him on those defenses and the evidence he would have relied upon to rebut them. This would seem particularly unfair in a case like the one at bar where the underlying action was aborted, allegedly through the defendant attorney's negligence, prior to pretrial discovery.

A survey of legal malpractice cases in other jurisdictions demonstrates that, in appropriate circumstances, courts have not hesitated to require the defendant attorney to bear the burden of proof on certain factual issues. In *Baker v Beal* (225 NW2d 106 [Iowa]), for example, the plaintiff lost her cause of action due to a failure of proof on an element essential to recovery under a dram shop statute. In the legal malpractice suit that followed, the plaintiff again was unable to prove the required element and her case was dismissed. In reinstating the malpractice action, the Supreme Court of Iowa indulged in the presumption that, because the attorneys had chosen the statute under which the action was brought, they had initially ascertained that they would be able to prove the missing element. The court wrote (p 110): "In a legal malpractice action against these defendant-lawyers we hold [that] they

shall not be heard to argue plaintiff's underlying dram shop case would not have been successful because she did not prove [the tavern] was operated by a licensee or permittee. For the purposes of this litigation, that element was sufficiently established by uncontroverted proof [that] these defendants elected to bring the dram shop action * * * We will not assume after they had the case in their office for two years they selected a statutory cause of action upon which no relief could be granted. We hold plaintiff is entitled to the same presumption defendants rely on in another context: everyone is presumed to have discharged his duty, whether legal or moral, until the contrary is made to appear."

In *Winter v Brown* (365 A2d 381 [DC Ct App]), the court dealt with the plaintiffs' alleged inability to establish damages in a legal malpractice case. The defendant attorneys had been unaware of the appropriate Statute of Limitations and, as a result, the underlying action was dismissed as untimely. The court upheld the denial of the attorneys' motion for a directed verdict made upon the ground that, because plaintiffs had failed to sue other potentially liable defendants in the underlying action for medical malpractice, they had not established their damages. Recognizing the difficulties inherent in establishing the amount of actual damages in such a case, the court nevertheless held that (p 385): "[The attorneys] have precipitated a situation in which the difference in value between the cause of action of which they deprived [the plaintiffs] and the cause of action which [the plaintiffs] still retain against hospital agents or employees is not subject to fair measurement or calculation. It is they, rather than [the plaintiffs], who must bear the onus of their error and the resultant impossibility of ascertaining the value of what was lost."

Indeed, one commentator has gone so far as to express the view that a "modified *res ipsa loquitur*" theory be available in legal malpractice cases, and that the plaintiff be required to prove only the existence of the attorney-client relationship and the attorney's negligence. The defendant attorney would then assume the entire burden of proving that the underlying action was not meritorious (see Note, A Modern Approach to the Legal Malpractice

Tort, 52 Ind LJ 689). We need not pass upon the merits of this view, however, to resolve the issue at bar.

We think it sufficient that, in accepting a client's case, an attorney undertakes the responsibility of ascertaining the pertinent facts and preparing for trial. It is fair to presume that, in doing so, he will assess the viability of affirmative defenses raised against his client and devise strategies for rebutting them. In our view, therefore, should the attorney in a subsequent legal malpractice action contend that his client's case would have been defeated by an affirmative defense, it is appropriate to require him to prove it. As another commentator has observed: "If the trial of the underlying action would have been subject to any defenses, the burden should be upon the attorney to raise such defenses and, as the original defendant would be obligated to do, prove that the defenses were viable. It would be unfair to require a client to anticipate and disprove every possible defense which may have been raised had the action been tried. Therefore, the onus, as well as the incentive, should most appropriately be upon the attorney." (Mallen & Levit, Legal Malpractice, p 505.)

Finally, even if the defendant attorney can establish that an affirmative defense would have defeated the underlying action, he will not necessarily prevail in the legal malpractice suit. If, for example, the potentially successful affirmative defense was itself grounded on a failure attributable to the defendant attorney, he will not be heard to raise the defense as a bar to the legal malpractice action. In the instant case, the carriers' third affirmative defense in the underlying action was that an indispensable party plaintiff had not been joined. The same affirmative defense was raised in the underlying action in *Schlosser v Tropoli* (609 SW2d 255 [Tex]). In that case, when the defendant attorney attempted to prove that the affirmative defense would have defeated the plaintiff's underlying claim, the court wrote (p 259): "It is difficult for the court to accept the argument that an attorney is not to be liable in a malpractice action for a case being dismissed for want of prosecution solely because the same attorney failed to join an indispensable party in the suit which was dismissed. In effect the argument the appellant would have this court

accept * * * would require that we excuse one instance of negligence, because of earlier negligence on the part of the attorney."

In view of all the foregoing, therefore, we hold that it is the burden of the defendant attorney in a legal malpractice action to prove that affirmative defenses, which were raised in the underlying action and which were not predicated upon his own negligence, would have defeated the plaintiff's claim. Thus, we reject the defendant's contention that the instant case was properly dismissed on the ground that the plaintiff offered no evidence as to how it would have rebutted the three affirmative defenses asserted by the carriers in the underlying action.

Accordingly, we modify the judgment which dismissed the plaintiff's action. That portion of the complaint which is predicated upon legal malpractice in connection with plaintiff's claim to insurance proceeds for damage to the bar and grill is severed, and a new trial is granted thereon. As so modified, the judgment is affirmed.

DAMIANI, THOMPSON and GULOTTA, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered June 16, 1981, modified (1) by deleting from the first decretal paragraph the words "and it is further" and adding thereto, after the word "dismissed", the following: "except for that portion of the complaint which is predicated upon legal malpractice in connection with plaintiff's claim to insurance proceeds for damage to the bar and grill" and (2) by deleting the second decretal paragraph. As so modified, judgment affirmed, without costs or disbursements, the afore-mentioned claim with respect to the bar and grill is severed and a new trial is granted with respect thereto.