IGNOTOV v REITER

Docket No. 73095. Argued June 5, 1985 (Calendar No. 16). Decided
    July 22, 1986.

Daniel T. Ignotov brought an action in the Shiawassee Circuit
    Court against Samuel S. Reiter, an attorney, alleging malprac-
    tice in failing to inform him of the date of a hearing at which
    his parental rights with respect to his daughter were termi-
    nated and in failing to appear on his behalf at the hearing. The
    court, Harry P. Newblatt, J., awarded the plaintiff damages of
    $25,000, reduced by twenty-five percent because of the plain-
    tiff's comparative negligence. The Court of Appeals, DANHOF,
    C.J., and BRONSON and PETERSON, JJ., reversed in an opinion
    per curiam (Docket No. 66565). The plaintiff appeals.

The judgment of the Court of Appeals is affirmed by equal
    division.

Justice LEVIN, joined by Chief Justice WILLIAMS, would re-
    verse the judgment of the Court of Appeals and reinstate the
    judgment of the trial court.

1. The trial court did not err in finding that the defendant's
    negligence was the cause of the termination of his client's
    parental rights. The trial court's finding that the defendant
    might have achieved a more favorable result through settle-
    ment had he been represented properly and the award of
    damages for the lost opportunity to resolve the matter by
    settlement were not clearly erroneous.

2. Where, as in this case, it is established that a lawyer failed
    to properly represent a client, it is necessary to determine
    whether the client, if properly represented, would have
    achieved a more favorable result. The termination of the plain-
    tiff's parental rights was not inevitable. While the evidence of
    nonpayment of child support and noncommunication with the
    child permitted the probate court to terminate the parental
    rights, it was not shown that the plaintiff could not have

REFERENCES
Am Jur 2d, Attorneys at Law §§ 197-236.
Assignability of claim for legal malpractice. 40 ALR4th 684.
What statute of limitations governs damage action against attorney
    for malpractice. 2 ALR4th 284.

avoided such a result. The plaintiff was not required to show that but for the defendant's failure to exercise due care a more favorable or acceptable settlement would have been achieved. Rather, it was for the trier of fact to assess that likelihood.

Justice Boyle, concurring with Justice Levin, stated that, unlike most cases involving malpractice with regard to settlement of or failure to settle a case, in this case the record establishes that damages were awarded for the loss of the plaintiff's parental rights, not a lost opportunity to resolve the matter by settlement. The defendant's misconduct did not directly result in the loss of an opportunity to settle.

Justice Riley, joined by Justices Brickley and Cavanagh, would affirm the judgment of the Court of Appeals.

In an action for attorney malpractice, the plaintiff has the burden of proving an attorney-client relationship, alleged negligent acts, that the negligence was a proximate cause of the injury, and the fact and extent of the injury. In this case, because the plaintiff claimed that the defendant's failure to appear at the termination hearing caused him to suffer damages, he was required to prove that the defendant's negligence was a proximate cause of his damages, that but for the defendant's negligence he would have been successful at the hearing. The particular damages alleged by the plaintiff were the loss of parental rights. The record clearly indicates that the plaintiff failed to show that but for his attorney's negligence he would have retained those rights.

Justice Archer took no part in the decision of this case.

130 Mich App 409; 343 NW2d 574 (1983) affirmed.

OPINION BY LEVIN, J.

1. ATTORNEY AND CLIENT — MALPRACTICE — FAILURE TO REPRESENT — TERMINATION OF PARENTAL RIGHTS.

Findings in an action against an attorney for malpractice that termination of a client's parental rights was caused by the negligence of the attorney in failing to inform the client of the date of the termination hearing and to appear on his behalf at the hearing and that the client might have achieved a more favorable result through settlement had he been represented properly, as well as an award of damages for the lost opportunity to resolve the matter by settlement, were not clearly erroneous.

2. ATTORNEY AND CLIENT — MALPRACTICE — FAILURE TO REPRESENT — TERMINATION OF PARENTAL RIGHTS.

In an action by a client against an attorney for malpractice for

*failure to properly represent the client in a matter which resulted in the termination of the client's parental rights, the client was not required to show that but for the attorney's failure to exercise due care a more favorable settlement would have been achieved; rather, it was for the trier of fact to assess that likelihood.*

OPINION BY RILEY, J.

3. ATTORNEY AND CLIENT — MALPRACTICE — NEGLIGENCE.

*In an action for attorney malpractice, the plaintiff has the burden of proving an attorney-client relationship, alleged negligent acts, that the negligence was the proximate cause of the injury, and the fact and extent of the injury.*

*Dunnings & Canady, P.C.* (by *Stuart J. Dunnings, III*), for the plaintiff.

*Buck & Mangapora* (by *Douglas I. Buck* and *Douglas I. Buck, II*) for the defendant.

LEVIN, J. The issue presented in this legal malpractice action is whether the trial judge clearly erred in finding that a lawyer's negligence was a cause of the termination of his client's parental rights. We conclude that the judge did not err, and would reverse the judgment of the Court of Appeals which set aside a money judgment in favor of the client.

I

Samuel S. Reiter was retained by Daniel T. Ignotov to represent Ignotov in proceedings concerning his daughter, Dana Sue. These proceedings were initiated by Ignotov's ex-wife, Janice Everest, as the first step in having Dana Sue adopted by Janice Everest's husband. Ignotov had not communicated with his daughter nor paid child support

for two years, thereby providing statutory authority to terminate his parental rights.[1]

Ignotov spoke to Reiter on the telephone and sent him a retainer and a letter expressing his thoughts.[2] Discussions ensued between Reiter and Everest's lawyer. Her lawyer made an offer in settlement that would have required Ignotov to pay back child support and increased future support. In return, Everest would agree to suspend the proceedings for two years. Ignotov rejected the offer.

Reiter testified that Ignotov was unwilling to pay child support and that he had advised Ignotov that unless he modified his stance he would lose his parental rights.[3] Ignotov testified he knew he

[1] (6) If the parents of a child are divorced, or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets the conditions in section 39(2) of this chapter, and if the parent having legal custody of the child subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing *may* issue an order terminating the rights of the other parent if both of the following occur:

(a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition.

(b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition. [Emphasis supplied. MCL 710.51; MSA 27.3178(555.51).]

[2] The letter included the following statement: "Its just that I cant rely on her mothers judgment and I would want my daghter should anything happen to her mother." [Sic.]

[3] Reiter testified that Ignotov "said that he would rather that things remain the way they were with him paying no support, remaining in the background, being available for his wife. He was sure based upon [sic] his wife's prior behavior that there would be another breakdown in whatever [marital] relationship [she had]. In fact, he told me that was her fourth marriage, and he was positive that there would come

had to pay child support, but rejected the settlement offer because it did not provide for visitation rights and contained other provisions he found objectionable, such as requiring counseling and having Dana Sue change her last name to Everest.

Shortly after Ignotov rejected the settlement offer, Reiter wrote to Ignotov stating: "I believe that the conclusion of our conversation was that you did not wish to make any such [counter] offer and that under the circumstances you would not contest the Adoption Petition." The letter also stated: "As soon as I receive Notice of the Hearing date on the Petition I will notify you of it and will consult with you as to further actions."[4]

Ignotov's parental rights were terminated following a hearing. Although Reiter was notified of the hearing, he neither notified Ignotov of the date of the hearing nor appeared on his behalf.[5] Reiter's

---

within the near future another time in which she would leave the children, abandon this child and he wanted to be able to remain in the background and available for that child."

[4] The full text of the letter is as follows:

Dear Dan,

I enclose herewith a copy of the proposal submitted to me by your ex-wife's attorney.

As I stated over the phone this is only a proposal and I believe they *would be amenable to a counter proposal.* However, it will require some effort upon your part of some recognition of your obligation to support your daughter before we can come to any agreement which would result in their withdrawing their Petition for Adoption.

I believe that the conclusion of our conversation was that you did not wish to make any such offer and that under the circumstances you would not contest the Adoption Petition.

As soon as I receive Notice of the Hearing date on the Petition I will notify you of it and will consult with you as to further actions.

Very truly yours,

/s/ Samuel S. Reiter [Emphasis supplied.]

[5] At the trial, Reiter acknowledged that he should have appeared at

failure to appear was not inadvertent. When Reiter failed to appear, the probate judge telephoned him. Nevertheless, Reiter did not appear.

Ignotov commenced this action alleging legal malpractice. After a bench trial, the judge found that Ignotov's damages were $25,000, and that he was twenty-five percent comparatively negligent. A judgment against Reiter for $18,750 was entered. The Court of Appeals reversed.[6]

## II

Ignotov established that he had retained Reiter to represent him and that Reiter had breached his obligation to exercise due care when he failed to notify Ignotov of the date of the hearing or to appear on that date. Reiter argues that Ignotov nevertheless may not recover damages because he did not show that had Reiter appeared at the hearing he would have been able to prevent the termination of Ignotov's parental rights. The Court of Appeals agreed with Reiter, stating that Ignotov had presented no evidence that he would have appeared at the hearing prepared to settle.

When it has been established that a lawyer failed to represent his client properly, it then becomes necessary to determine whether, if the client had been properly represented, a more favorable result would have been achieved. In the instant case, a more favorable result might have been achieved either by a successful defense or by a settlement on terms more favorable than the result that ensued.

the hearing. He offered no excuse for his failure to appear. He said he believed that if Ignotov appeared at the hearing and did not acknowledge a willingness to pay child support, he would be jailed for contempt. He also said he believed that if Ignotov refused to pay child support until he received full visitation rights, the probate judge would definitely terminate Ignotov's parental rights.

[6] *Ignotov v Reiter,* 130 Mich App 409; 343 NW2d 574 (1983).

**A**

The result adverse to Ignotov in the proceedings in which Reiter failed to appear was not inevitable. If Reiter had appeared and had represented Ignotov at the hearing, Ignotov's parental rights might not have been terminated. While the evidence of nonpayment and noncommunication for two years permitted the probate judge to terminate Ignotov's parental rights, consideration of the best interests of the child might have led the judge to conclude that termination was not warranted. Reiter did not show that Ignotov could not have avoided the termination of his parental rights.

**B**

While Ignotov did not show that had he been properly represented he would have prevailed and his parental rights would not have been terminated, the trial judge properly considered whether a more favorable result might have been achieved through a settlement. The judge's finding that Ignotov might have achieved a more favorable result through settlement, and his determination of the amount of damages to be awarded for depriving Ignotov of the opportunity to achieve a more favorable result through settlement, are not clearly erroneous.

The judge acknowledged that without some recognition by Ignotov of his support obligation it was not likely that he could have avoided the termination of his parental rights. The judge reasoned, however, that had Ignotov continued to be properly represented he might have realized the weakness in his position and settled by agreeing to some acceptable payment before the termination of his parental rights.

Ignotov's ex-wife had made a settlement offer

that required Ignotov to pay back and future child support, but did not require termination of Ignotov's parental rights. She thus might have agreed to a counter proposal not involving termination of his parental rights.

Ignotov's letter to Reiter stating in effect that if he were forced to pay child support he would demand visitation rights does not compel the conclusion that he would have allowed his parental rights to be terminated if he could thereby have avoided paying child support. It appears that Ignotov sought to retain the ability to regain custody of his daughter because he was apprehensive about her fate should anything happen to her mother.

While Ignotov might have insisted on maintaining a weak, if not indefensible, bargaining position he might indeed, as the judge found, after receipt of notice of the hearing date, have developed, at or shortly before the hearing, a negotiating stance more likely to bring about a settlement and made a counter proposal acceptable to his ex-wife or a payment that would have satisfied the judge that his parental rights should not be terminated.[7]

Even stubborn clients are entitled to continued representation. A lawyer may seek permission from the court to withdraw from further representation of a client. A lawyer may not, however, simply abandon his client.

C

We have considered, but do not address, the suit within a suit doctrine adverted to in the opinion of

[7] Ignotov testified that after his parental rights were terminated he paid $1,750 of his back child support obligation of $2,811 pursuant to a settlement worked out by another lawyer.

the Court of Appeals and the briefs of counsel.[8] In
the instant case, damages were awarded because
the lawyer had deprived the client of the opportu-
nity to resolve the controversy by settlement, not
on the basis that the client would have prevailed
had the matter gone to judgment.[9]

In the instant case, both the breach and the loss
were clearly established. Reiter breached his duty
to exercise due care and Ignotov lost his parental
rights. The disputed factual issue was whether the
breach caused the loss.

The Court of Appeals ruled as a matter of law
that Ignotov was required to show that if he had
been notified of the hearing, he would have ap-
peared prepared to settle. The judge, who sat as
trier of fact, found that had Reiter notified Ignotov
of the date of the hearing as he had promised the
matter might well have been settled before the
hearing with a result more favorable to Ignotov
than the result that ensued.

Reiter undertook to represent Ignotov and failed
to do so. Ignotov lost his parental rights. Damages
were properly awarded for the lost opportunity to
resolve the matter by settlement. The settlement
value of a matter in controversy is determinable
without regard to, and does not depend on,
whether the parties are willing to settle on that
basis. Ignotov was not required to show that "but
for" Reiter's failure to exercise due care a more
favorable or acceptable settlement would assuredly
have been achieved. It was for the trier of fact to

[8] Compare *Daugert v Pappas,* 104 Wash 2d 254; 704 P2d 600 (1985),
with *Jenkins v St Paul Fire & Marine Ins Co,* 422 So 2d 1109 (La,
1982), *Romanian American Interests, Inc v Scher,* 94 AD2d 549; 464
NYS2d 821 (1983), *Glidden v Terranova,* 12 Mass App 597; 427 NE2d
1169 (1981), and *Winter v Brown,* 365 A2d 381 (DC App, 1976).

[9] Expert testimony regarding settlement value may in some cases
be required where the client seeks to recover on that basis and the
claim in the underlying action or proceeding is for money damages.

assess the likelihood that Ignotov would have achieved a result through settlement more favorable than the result that ensued.

WILLIAMS, C.J., concurred with LEVIN, J.

BOYLE, J. I concur in the result reached by Justice LEVIN.

The Court of Appeals in the case at bar clearly erred when it required the plaintiff to establish that "*the* proximate cause of his injury was defendant's failure to appear at the termination hearing." *Ignotov v Reiter,* 130 Mich App 409, 412; 343 NW2d 574 (1983) (emphasis added). It is well-established that in Michigan the burden is on the plaintiff to establish only that the defendant's negligence is *a* proximate cause of the plaintiff's damages. *Kirby v Larson,* 400 Mich 585, 605; 256 NW2d 400 (1977); *Sedorchuk v Weeder,* 311 Mich 6, 10-11; 18 NW2d 397 (1945); *Barringer v Arnold,* 358 Mich 594, 599-600; 101 NW2d 365 (1960); SJI2d 30.03.

This Court has defined proximate cause as "a cause as operates to produce particular consequences without the intervention of any independent, unforeseen cause, without which the injuries would not have occurred." *Nielsen v Henry H Stevens, Inc,* 368 Mich 216, 220; 118 NW2d 397 (1962). Moreover,

[t]he general rule, expressed in terms of damages, and long followed in this State, is that in a tort action, the tort-feasor is liable for all injuries resulting directly from his wrongful act, whether foreseeable or not, provided the damages are the legal and natural consequences of the wrongful act, and are such as, according to common experience and the usual course of events, might reasonably have been anticipated. Remote, contingent, or

speculative damages are not considered in conformity to the general rule. [*Sutter v Biggs,* 377 Mich 80, 86; 139 NW2d 684 (1966). Citations omitted.]

The trial court in the case at bar found that a proximate cause of plaintiff's injury was defendant's negligence in failing to notify plaintiff of the hearing on the petition to terminate plaintiff's parental rights. The court also found that a proximate cause of plaintiff's injury was the plaintiff's negligence in failing to notify defendant that he would contest the petition regardless of plaintiff's refusal to settle according to his ex-wife's last settlement offer. These findings were supported by the record. Therefore, I agree with Justice LEVIN that the trial court did not clearly err on the finding of proximate cause.

Unlike Justice LEVIN, however, I believe the record establishes that damages were awarded for the loss of plaintiff's parental rights, not "the lost opportunity to resolve the matter by settlement." The trial court in its decision specifically awarded damages to Ignotov for "the loss of his child." Moreover, this case is unlike most cases involving malpractice in connection with the settlement of or failure to settle a case. See generally Anno: *Legal malpractice in settling or failing to settle client's case,* 87 ALR3d 168. This case did not involve Reiter's failure to disclose a settlement proposal to Ignotov, or the failure of Reiter to offer an authorized settlement proposal to Ignotov's ex-wife. Therefore, Reiter's misconduct did not directly result in the loss of an opportunity to settle.

The trial court's award for the instant plaintiff's loss of parental rights had a basis in the record. I would reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court.

Riley, J. I respectfully dissent from the opinions of my colleagues and would affirm the conclusion reached by the Court of Appeals in *Ignotov v Reiter,* 130 Mich App 409; 343 NW2d 574 (1983).

In an action for legal malpractice, the plaintiff has the burden of proving:

> "(1) the existence of the attorney-client relationship; (2) the acts which are alleged to have constituted the negligence; (3) that the negligence was the proximate cause of the injury and; (4) the fact and extent of the injury alleged." *Basic Food Industries, Inc v Grant,* 107 Mich App 685, 690; 310 NW2d 26 (1981), lv den 413 Mich 913 (1982).[1]

This Court recognized in *Grant* that the element of proximate cause is often problematic:

> " 'The recovery sought is usually the value of the claim in suit in the proceeding in which the negligent act occurred, if the client was a plaintiff in that action, or, if he was a defendant, the amount of the judgment imposed upon him, and, in accordance with general rules as to proximate cause, it is generally held that before such recovery can be had the client must establish that,

---

[1] I agree with Justice Boyle that under element three, the language "the proximate cause" should be, in accordance with Michigan law, "a proximate cause." *Kirby v Larson,* 400 Mich 585; 256 NW2d 400 (1977). Nevertheless, I do not believe that this mandates a different conclusion than that reached by the Court of Appeals in the instant case. While the plaintiff is required to prove the defendant's negligence was *a* proximate cause of his damages, an essential aspect of the element of proximate cause is the requirement that the plaintiff establish cause in fact. Only after it is established that the defendant's conduct has in fact been a cause of the plaintiff's damages is it necessary to address the question whether the defendant should be held legally responsible for the damages, i.e., is there proximate cause. See *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977), and Prosser & Keeton, Torts (5th ed), §§ 41, 42. Consequently, because I believe that the plaintiff has failed to prove that the defendant's negligence was the cause in fact of his damages, the erroneous application by the Court of Appeals of "the proximate cause" to the facts of this case, instead of "a proximate cause," does not change the correctness of their conclusion.

absent the act or omission complained of, the claim lost would have been recovered or the judgment suffered avoided. Accordingly, the client seeking recovery from his attorney is faced with the difficult task of proving two cases within a single proceeding.' 45 ALR2d 5, § 2, p 10.

\* \* \*

"From the authorities cited above, it would appear that the 'suit within a suit' concept has vitality only in a limited number of situations, such as where an attorney's negligence prevents the client from bringing a cause of action (such as where he allows the statute of limitations to run), *where the attorney's failure to appear causes judgment to be entered against his client*[2] or where the attorney's negligence prevents an appeal from being perfected. In such cases, it is at least arguably true that the suit within a suit requirement serves to insure that the damages complained of due to the attorney's negligence are more than mere speculation." (Footnote omitted.) *Grant, supra*, pp 691, 693. [*Ignotov, supra*, 411-412. Emphasis added.]

The plaintiff's action clearly falls within the aforementioned emphasized language, "where the attorney's failure to appear causes judgment to be entered against his client . . . ." It is the defendant's failure to appear on behalf of the plaintiff that the plaintiff is claiming caused him to suffer

---

2 A client's burden of proving injury as a result of his attorney's negligence is especially difficult to meet when the attorney's conduct prevented the client from bringing his original cause of action or the *attorney's failure to appear caused judgment to be entered against him as a defendant.* In addition to proving negligence, a client must show that *but for* his attorney's negligence he would have been successful in the original litigation; in effect, he must prevail in two distinct suits. [Note, *Attorney malpractice*, 63 Colum L R 1292, 1307 (1963). Emphasis added. See *Basic Food Industries, supra*, 692.]

damages, i.e., loss of parental rights.[3] Therefore, I am persuaded that the "suit within a suit" concept is applicable in this instance. Pursuant to the "suit within a suit" concept, the plaintiff must prove, inter alia, that the defendant's negligence was a proximate cause of his damages. Included within the element of "proximate cause" is the requirement that the plaintiff establish cause in fact. Moreover, even if cause in fact is established, there remains the question of proximate cause, whether the defendant should be legally responsible for the injury to the plaintiff. I believe that, restricted to the question of cause in fact, the "but for" test should be implemented in this case: "An act or omission is not regarded as a cause of an event if a particular event would have occurred without it." Prosser & Keeton, Torts (5th ed), § 41, p 265. Accordingly, pursuant to the "suit within a suit" concept, the plaintiff must establish, as part of the proximate cause element, that, but for the negligence complained of, the plaintiff would have been successful in the defense of the action in

---

[3] It appears that Justice Levin considered but did not embrace the "suit within a suit" doctrine, reasoning that damages were awarded because the defendant deprived the plaintiff of the opportunity to settle the case, and not on the basis that the client would have been successful had the case gone to judgment. *Ante,* p 399. With regard to any lost opportunity to settle this case prior to trial, I am in agreement with Justice Boyle to the extent that "[t]his case did not involve Reiter's failure to disclose a settlement proposal to Ignotov, or the failure of Reiter to offer an authorized settlement proposal to Ignotov's ex-wife." (Citing 87 ALR3d 168.) *Ante,* p 401. Regarding any lost opportunity of settlement because of Reiter's failure to appear, I believe Justice Levin's rationale improperly circumvents the "case within a case" doctrine. In *Basic Food Industries, supra,* 693, the Court of Appeals stated that the doctrine had limited application but did encompass a situation where the attorney's failure to appear caused judgment to be entered against the client. Concomitant with the attorney's failure to appear is also the lost potential for settlement. Thus, I do not believe that an attorney's failure to appear, causing judgment to be entered against a client, should be distinguished from the loss of any settlement opportunity because of the same failure to appear for the purposes of the "suit within a suit" doctrine.

question. In applying the "suit within a suit" concept to the facts of this case, the Court of Appeals held:

> Plaintiff here failed to establish that the proximate cause of his injury was defendant's failure to appear at the termination hearing. Plaintiff presented no evidence to show that he would have appeared at the hearing willing to work out an alternative settlement to prevent the termination of his parental rights. Although the trial judge concluded that plaintiff might have finally realized that defendant's advice "was correct and that if he wanted to cease halt [sic] the termination of his parental rights he must recognize the legal fact that he had an obligation to pay back and future support," there was no evidence in the record to support this contention. [*Ignotov, supra,* 412-413.]

The particular damage alleged by the plaintiff was the loss of parental rights. Therefore, as part of the plaintiff's burden of proof to establish liability on behalf of the defendant, the plaintiff had to prove cause in fact, i.e., but for the attorney's negligence the plaintiff would have retained his parental rights.[4] While I disagree with the Court of Appeals use of "the proximate cause" language, I believe that the record clearly shows that the plaintiff has not established causation in this case. Thus, I agree with the Court of Appeals determi-

---

[4] The plaintiff's burden of establishing that the defendant's negligence was a cause in fact of the injury is not affected by the defense of comparative negligence.

There is some debate over what is to be compared under comparative negligence, negligence or causation. The problem in certain respects is one of terminology. Causation in fact is an absolute concept, which by its nature is incapable of being divided into comparative degrees—it either exists or it does not. The adoption of comparative negligence, therefore, should not affect this preliminary determination. [Prosser & Keeton, Torts (5th ed), § 67, p 474. See authority cited in footnotes.]

nation that the plaintiff failed to carry his burden of proof. I would affirm.

BRICKLEY and CAVANAGH, JJ., concurred with RILEY, J.

ARCHER, J., took no part in the decision of this case.