People v Colon (2004 NY Slip Op 24297)

People v Colon

2004 NY Slip Op 24297 [5 Misc 3d 365]

August 6, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Thursday, February 10, 2005

[*1]
The People of the State of New York, Plaintiff,
v
Rafael Juan Colon, Defendant.
Supreme Court, New York County, August 6, 2004

APPEARANCES OF COUNSEL

Legal Aid Society, New York City (Kenneth Ives and Thomas Klein of counsel), for defendant. Robert M. Morgenthau, District Attorney, New York City (Lanita Hobbs and Julie Nobel of counsel), for plaintiff.

{**5 Misc 3d at 366} OPINION OF THE COURT

Marcy L. Kahn, J.
Defendant Rafael Juan Colon is charged by indictment with two counts of murder in the first degree (Penal Law § 125.27 [1] [a] [vii]; [b]) and two counts of murder in the second degree (Penal Law § 125.25 [1], [2]).[FN1]

Upon defendant's motion, a Huntley/Dunaway hearing for defendant was held over a period of four days, and was followed by extensive oral argument. Thereafter, I issued an oral ruling denying defendant's motions in their entirety. Subsequently, after reopening the hearing during defendant's trial, I again denied suppression.
What follows is a portion of my subsequently issued written opinion which explained the reasons for the ruling. This opinion has been edited for publication. It includes only the portion of the original opinion which addresses the allocation of the evidentiary burden on the issue of custody for Miranda purposes.

II. Conclusions of Law
A. Huntley Motion

1. Custody for Miranda Purposes

Before the police may subject a person to custodial interrogation, they must administer Miranda warnings. (Miranda v Arizona, 384 US 436 [1966].) Custodial interrogation was defined in Miranda as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (Id. at [*2]444.) A person is deemed to be in custody, thus triggering the obligation of the police to provide Miranda warnings and secure a waiver of rights prior to questioning, when a reasonable person in the defendant's position who is innocent of any crime would have believed himself or herself to be in custody. (People v Yukl, 25 NY2d 585, 589 [1969]; see Berkemer v McCarty, 468 US 420 [1984].) Accordingly, unless the individual is in custody, it is not necessary for the police to administer Miranda warnings prior to questioning a suspect. (People v Huffman, 41 NY2d 29 [1976].){**5 Misc 3d at 367}

2. Burden of Proof on Custody

Defendant contends that, although the Court of Appeals has yet to consider the issue explicitly, the Court has implicitly held in People v Alls (83 NY2d 94 [1993]) that the prosecution bears the burden of establishing that a pre-Miranda statement was not the product of custodial interrogation. Defendant also contends that federal case law which places the burden of proving custody on the defendant is inapplicable, as it is premised on legal principles which New York State does not follow. Finally, defendant claims that the People are in a better position to establish custody, and that the cases the People rely on to place the burden on defendant are inapposite, as they address other matters which, unlike custody, a defendant is uniquely qualified to establish.
The People respond that defendant has the burden to establish that his pre-Miranda statements were elicited from him while he was in custody. The People argue that a defendant's claim of custody is analogous to two other claims on which the Court of Appeals has held that a defendant must bear the burden of proof; namely, a mental deficiency that would affect the voluntariness of a Miranda waiver (People v Rosa, 65 NY2d 380 [1985]), and representation by counsel on an earlier charge at the time of interrogation (People v Love, 57 NY2d 998 [1982]).
Although it is well settled that the People have the burden of proving beyond a reasonable doubt that a defendant's statement was voluntarily made (see People v Huntley, 15 NY2d 72 [1965]), the Court of Appeals has not authoritatively determined which party has the burden of establishing custody, necessitating Miranda warnings and a waiver of rights as a precondition to interrogation. (See Brunetti, New York Confessions, at 328 [1st ed 2001].) In this regard, the parties vigorously debate the importance, for present purposes, of the Court's decision in People v Alls (supra).
The Alls case involved a state prisoner who was accused by a fellow inmate of raping and assaulting him during their joint incarceration. After the alleged victim reported the incident to the prison staff, a correction sergeant was directed to question the defendant as to a possible fight between the two inmates. The sergeant took the defendant from his cell to a secluded, office-like area in the basement of the prison and interviewed him concerning the incident. No Miranda warnings were given at any time during the questioning. Alls made incriminating admissions and was charged with sodomy and assault.{**5 Misc 3d at 368}
On the defendant's motion to suppress his statements on the ground that the correction sergeant failed to administer Miranda warnings prior to questioning, the hearing court denied the motion, holding, inter alia, that the defendant had not been in custody at the time of the questioning. That court reasoned that Alls had not been subjected to custodial interrogation or restraints on his liberty beyond those generally in place during one's incarceration. The Appellate Division affirmed.
On appeal, the Court of Appeals held that the trial court had used an erroneous standard in reaching its decision on the motion by requiring a demonstration of "inherently coercive [*3]pressures" undermining the individual's free will before requiring the giving of Miranda warnings. (Id. at 101.) The Court nonetheless stopped short of adopting a per se rule that any questioning of an inmate in a correctional facility is custodial interrogation under Miranda. Rather, the Court of Appeals held that where the circumstance of the detention and interrogation ceases to be analogous to noncustodial, nonprison questioning, but instead involves an "added constraint" which would lead an inmate reasonably to conclude that there has been a restriction on his or her freedom exceeding that of ordinary confinement, Miranda warnings are necessary. (Id. at 100.) Thus, finding no evidentiary support in the record for its conclusion that the defendant's trip to the basement was consensual (id.), the Court of Appeals remitted the case for additional fact-finding at a new suppression hearing. In language which has since been subject to differing interpretations (and is so in the instant case), the Court stated:
"If defendant's movement to the basement area of his facility housing unit was at [the sergeant's] direction, defendant was under some compulsion to comply, in the absence of proof of other circumstances which could have led defendant reasonably to believe he was free to decline to follow the correction officer's directions, such as [the sergeant's] offering him a choice as to where to be interviewed. The People could only have dispelled the inference of defendant's compulsion to accompany [the sergeant] by evidence that defendant 'was actually offered a choice' (People v Dodt, [61 NY2d 408,] 417)." (Id. at 102.)
In Dodt, a Fourth Amendment case, the Court, in dictum, had noted the People's failure to meet their heavy burden to establish defendant's consent to accompany the police to the precinct after {**5 Misc 3d at 369}an unlawful automobile stop and arrest. Determinative for the Court in Dodt had been the People's failure to offer any evidence that defendant had been given the option of refusing to consent to accompany police to the precinct.
Dissenting in Alls, Judge Simons opined that the Alls majority had (improperly) "suggest[ed]" that the burden of proving custody for Miranda purposes rests on the People (People v Alls, supra, 83 NY2d at 113). The dissent cited in support the language quoted above in the majority opinion suggesting that the People could only dispel the inference that an inmate is compelled to obey the direction of a correction officer through evidence that the defendant was offered an actual choice of action. In this court's view, however, the Alls majority merely offered a suggestion, and neither addressed the issue directly nor articulated a holding to that effect which is binding on lower courts. (See People v Payne, 1 Misc 3d 909[A], 2004 NY Slip Op 50010[U] [2004].) Moreover, importation of principles peculiar to Fourth Amendment law into the application of the federal Miranda rules would likely have entailed a more extensive discussion by the Court, had such an announcement been intended.[FN2]

In any case, the facts presented in Alls, as well as the majority's treatment of them, limit [*4]the rule in that case to defendants who are already in custody. Accordingly, the most that can be said of Alls is that it holds that the People have the burden of proving that a defendant who is already in custody must be given a choice of either accompanying the authorities to be questioned or remaining behind. (See People v Gonzalez, 80 NY2d 883 [1992] [People failed to meet their burden of showing defendant's consent to accompany police].) Alls, therefore, does not offer a resolution of the issue before this court.
Neither has the Appellate Division, First Department, provided a definitive answer to the question of the allocation of the burden of proof on custody. In People v Morales (281 AD2d 182 [1st Dept 2001], lv denied 96 NY2d 922 [2001]), the trial court had held that the defendant should shoulder that burden. (See People v Morales, NYLJ, Dec. 8, 1997, at 30, col 4 [Sup Ct, NY County, McMahon, J.].) On appeal, the Appellate Division declined to decide the point, holding in its affirmance of the lower court only that "[r]egardless of which party is deemed to have {**5 Misc 3d at 370}the burden," the record established the absence of custody. (People v Morales, supra, 281 AD2d at 182, citing People v Alls, supra.) It appears, then, that the First Department, while citing Alls, does not find the case any more dispositive of the issue than does this court.
Lower courts which have directly confronted the issue are not in agreement on it. Two New York trial court cases have placed the burden to prove custody on the People. (People v Knight, NYLJ, Dec. 15, 1992, at 22, col 3 [Sup Ct, NY County, Yates, J.]; People v Lahita, NYLJ, Oct. 11, 1991, at 30, col 3 [Nassau Dist Ct, Lally, J.].) These cases are distinguishable from the instant case, however, as they both appear to reflect no more than an application of the Witherspoon rule (People v Witherspoon, 66 NY2d 973 [1985]). That rule permits the People to meet their burden of proving a statement's voluntariness by presenting evidence of the circumstances of the interrogation through the officer(s) who questioned the defendant, without requiring the People to produce any additional officers who may have been present with the defendant prior to the time the challenged statement was elicited. (Id.; People v Dunlap, 216 AD2d 215 [1st Dept 1995]; People v Leftwich, 134 AD2d 371 [2d Dept 1987], lv denied 70 NY2d 957 [1988].) Rather, the People must present such additional witnesses only when the defendant establishes a "bona fide factual predicate" which demonstrates that the other officers possess material evidence on the question of whether the statement was the product, either overtly or inherently, of coercive methods. (People v Witherspoon, supra, 66 NY2d at 974; People v Kollar, 286 AD2d 630 [1st Dept 2001], lv denied 97 NY2d 730 [2002].)
In Knight, the People failed to elicit any testimony at the suppression hearing concerning the defendant's seizure and detention by the police. In Lahita, the People presented insufficient evidence to establish what transpired while defendant was being questioned by the police. In each case, there was a failure by the People even to satisfy their burden of going forward with evidence from the testifying officers establishing the legality of the police conduct. In the instant case, however, the People have complied with the requirements of Witherspoon.
Other nisi prius courts in New York have held that the defendant bears the burden of proving custody by a preponderance of the credible evidence. (People v Payne, supra; People v Morales, supra, NYLJ, Dec. 8, 1997, at 30, col 4 [Sup Ct, NY County, McMahon, J.], affd on other grounds 281 AD2d 182 [1st Dept 2001],{**5 Misc 3d at 371} lv denied 96 NY2d 922 [2001]; People v Holder, NYLJ, Sept. 20, 1991, at 27, col 1 [Sup Ct, Kings County, Gerges, J.].) In sum, it can fairly be said that the issue remains unsettled in the courts of our state.
State v Armstrong (223 Wis 2d 331, 588 NW2d 606 [1999]), upon which defendant places principal [*5]reliance, and in which the Supreme Court of Wisconsin held that the State has the burden of proving custody, is of limited instructive value here. As was true in Alls, the defendant in Armstrong was already incarcerated on an unrelated matter when he was questioned by the police. Armstrong, like Alls, therefore, offers little guidance for this case, where defendant concedes that he voluntarily accompanied the police from his home and was not in custody while being transported.
Furthermore, notwithstanding the Wisconsin Supreme Court's thoughtful analysis in Armstrong, I must respectfully disagree with its rationale. In Armstrong, the court found that because the prosecution carries the burden of proving a waiver of Miranda rights (see Miranda v Arizona, supra, 384 US at 475), it should also assume the duty of establishing the absence of a custodial setting. (State v Armstrong, supra, 223 Wis 2d at 347, 588 NW2d at 613.) The analogy drawn in Armstrong, however, overlooks the long-standing principle that "courts indulge every reasonable presumption against waiver of fundamental constitutional rights" and "do not presume acquiescence in the loss of fundamental rights." (Johnson v Zerbst, 304 US 458, 464 [1938] [internal quotation marks and citations omitted].) This presumption against waiver of constitutional rights does not exist with respect to the issue of whether or not a suspect has been placed in police custody. Accordingly, as the issues of waiver of the constitutional rights to silence and counsel, on the one hand, and the existence of a custodial interrogation, on the other, are fundamentally different, it does not follow that the prosecution's burden to prove the former implies a burden to prove the latter.
Nonetheless, this court is unpersuaded by the People's effort to liken the question of burden allocation on the issue of custody to the questions presented in People v Love (supra) and People v Rosa (supra). In those cases, the Court of Appeals clearly placed the burden of proof of other material issues at a Huntley hearing on the defendant. Love involved a challenge to the intelligent and knowing waiver of Fifth and Sixth Amendment rights based upon the defendant's prior history of psychiatric hospitalization.{**5 Misc 3d at 372} In Rosa, the Court addressed a claim that the defendant's right to counsel had been violated due to his having been represented by counsel on an earlier charge at the time of his interrogation. In each of these cases, the issue to be proven (lack of intelligence of the waiver of rights in Love and the preexisting representation by counsel in Rosa) was peculiarly within the knowledge of the defendant. As the test for custody is objective, however, and does not rest upon facts peculiarly within the defendant's knowledge (see Yarborough v Alvarado, 541 US 652 [2004]), the People draw a false analogy by relying on Love and Rosa. Thus, New York's common law provides no clear guidance for the resolution of this issue.
The author of a leading treatise on evidence, Professor Charles McCormick, has written thoughtfully on the subject of the apportionment of the burdens of proof on contested evidentiary issues. (McCormick, Evidence § 337, at 415 [5th ed 1999].) While concluding that there is no key principle governing the subject, Professor McCormick has crafted a rubric, the elements of which (the McCormick factors) may be usefully employed in allocating evidentiary burdens:
"Their allocation, either initially or ultimately, will depend upon the weight that is given to any one or more of several factors, including: (1) the natural tendency to place the burdens on the party desiring change[;] (2) special policy considerations such as those disfavoring certain defenses[;] (3) convenience[;] (4) fairness[;] and (5) the judicial [*6]estimate of the probabilities." (Id.)
This test has been adopted by the Supreme Court of Wisconsin in State v McFarren (62 Wis 2d 492, 215 NW2d 459 [1974]), and has been referenced with approval by that court on the question of the allocation of the burden of proof for Jackson v Denno (378 US 368 [1964]) purposes in State v Armstrong (supra), cited here by defendant.[FN3]

I am persuaded that Professor McCormick's framework for allocating burdens of proof provides a useful rubric for determining the issue presented here. (See also Romanian Am. Interests v Scher, 94 AD2d 549 [2d Dept 1983] [court utilizes McCormick factors when allocating burden of proof].){**5 Misc 3d at 373}
The first of the McCormick factors holds that generally the burden of proving the relevant facts should be assigned to the party who seeks to change the present state of affairs. In this case, absent a successful suppression motion by the defendant, statements made by a defendant which are violative of the Miranda rule are nevertheless admissible at trial, if relevant. It is thus the defendant who seeks to change the general rules for admissibility by exercising his right to file a suppression motion. Accordingly, under the first McCormick factor, as defendant is the party who seeks to change the status quo, the burden to prove custody is fairly placed on him.
The second McCormick factor requires examination of any policy considerations inherent in the allocation of the burden. Here, one must consider the effect which placing the burden to prove custody on the defendant would have upon his constitutional rights. Requiring defendant to bear the burden here, however, would not infringe the Constitution's protection against self-incrimination. A defendant's testimony at a suppression hearing is cloaked with immunity, and may not be used by the People on their direct case at trial. (Simmons v United States, 390 US 377 [1968].) For that reason, there is no danger that defendant's Fifth Amendment rights would be jeopardized by requiring the defendant to prove custody. Thus, there are no policy considerations which would militate against allocating the burden of proof to the defendant.
The third McCormick factor, convenience, implies that the burden to prove custody should be shouldered by the party best able to carry it. The standard for determining custody, of course, is not whether the defendant thought he was in custody, but what a reasonable person, innocent of any crime, would have thought had he been in defendant's position. (People v Yukl, supra, 25 NY2d at 589.) The test is objective, and it is determined through an examination of all of the circumstances in which the defendant found himself. (See People v Centano, 76 NY2d 837 [1990].) Thus, as both the defendant and police officer witnesses can readily testify concerning the objective circumstances of defendant's position prior to and during the interrogation, the third McCormick factor, convenience, does not favor allocating the burden to prove custody to either party.
Under the fourth McCormick factor, fairness, it is fair to allocate the burden of proof to the party who seeks to take advantage of an exception to a general principle. In this case, the general principle is that Miranda warnings need only be administered {**5 Misc 3d at 374}prior to a custodial interrogation. (Miranda v Arizona, supra; People v Rodney P., 21 NY2d 1 [1967].) As defendant [*7]seeks to take advantage of the Miranda rule by invoking a condition under which it applies, it is fair to require the defendant to prove custody.
Moreover, to place on the People the burden to prove noncustody from the surrounding circumstances is to require them to prove a negative. Such a requirement " 'is generally unfair, especially since the conclusion that the negative of the circumstances is necessarily a product of definitional and therefore circular reasoning.' " (People v Rosa, supra, 65 NY2d at 386, quoting People v Patterson, 39 NY2d 288, 305-306 [1976] [Breitel, Ch. J., concurring].)
Finally, in assessing the fifth McCormick factor, the probabilities of the circumstances involved, the risk of failure of proof may be placed upon the party who contends that the more unusual event has occurred. For example, requiring the People to prove noncustody by establishing that a prison inmate was given a choice as to whether or not to accompany a correction officer is justified under the fifth McCormick factor, as it is extremely unlikely that an inmate generally is afforded the option of refusing an officer's request. (See People v Alls, supra.) On the other hand, while a civilian may experience a certain degree of unease when refusing a police officer's request to answer questions, it cannot be denied that police officers communicate with civilians and ask them questions far more often in noncustodial settings. As custody is the more infrequent setting in which a police officer might question a civilian, it is appropriate to place the burden to prove custody on the defendant.
Applying the McCormick factors to the situation at hand, then, each of the five factors either favors allocating the burden of proving custody to defendant, or is neutral on the subject. Accordingly, using the McCormick analysis, defendant should bear the burden of proof on this issue.
Apart from the five McCormick factors, the constitutional origin of the Miranda rule supports assigning the burden to the defendant. As Miranda warnings are required by the Federal Constitution (Dickerson v United States, 530 US 428 [2000]), and are not peculiarly a matter of our state constitutional jurisprudence,{**5 Misc 3d at 375}[FN4]

guidance may be drawn from decisions of the federal courts. Those courts which have considered the issue have uniformly placed the burden to prove custody on the defendant. (See e.g. United States v Jorgensen, 871 F2d 725, 729 [8th Cir 1989] [defendant has burden to establish that he was subject to custodial interrogation]; United States v Davis, 792 F2d 1299, 1309 [5th Cir 1986], cert denied 479 US 964 [1986] [defendant has burden to establish that he was under arrest or in custody]; United States v Charles, 738 F2d 686, 691-692 [5th Cir 1984] [defendant has burden to establish that statement was elicited through custodial interrogation].)
In Berkemer v McCarty (468 US 420 [1984]), the Supreme Court held that a person temporarily detained on a routine traffic stop is not necessarily in custody for the purposes of Miranda. There the Court found no custodial interrogation in the officer's questioning of a motorist upon a traffic stop, observing that "respondent has failed to demonstrate that, at any time between the initial stop and the arrest, he was subjected to restraints [*8]comparable to those associated with a formal arrest." (Id. at 441.)
Although the McCarty court did not specifically address the issue of the evidentiary burden, the quoted statement is at least as suggestive of an allocation of the burden of persuasion as to custody to the defendant as the previously quoted statement in Alls is of the contrary conclusion. Read together, these two statements can fairly be taken to suggest that where the presumption is one of absence of custody, as in routine traffic stops, the defendant must bear the burden of proof. Conversely, where the presumption is one of custody, as in the case of an incarcerated defendant who is under some compulsion to comply with a correction officer's direction or face severe disciplinary sanctions, the prosecution must shoulder the burden of proof. This interpretation both reconciles Alls with McCarty and is consistent with the McCormick factors.
In the present case, as noted, defendant was awakened by officers at his home and was asked to accompany them to the station house to answer some questions about the death of his neighbor. At this time, he was treated as a potential witness in the {**5 Misc 3d at 376}investigation. The defendant readily assented, and during his initial interview at the precinct was told that he was free to leave. During the ensuing pre-Miranda questioning, defendant was not restrained, was left unguarded, and was allowed to leave the room unsupervised. Indeed, at the hearing, defendant conceded that he wasn't in custody for most of this time period. Applying the lessons of McCarty and Alls, one must conclude that the presumption in defendant's case would have to be one of lack of custody. For this reason as well, then, the defense should bear the burden of proving the contrary conclusion.
Accordingly, for all the foregoing reasons, this court holds that the burden of proving custody for Miranda purposes rests with the defendant, at least where the defendant is not already incarcerated at the time of the interrogation.
<
>[Portions of opinion omitted for purposes of publication.]
>

Footnotes

Footnote 1: The factual background of this case has been set forth in this court's decision of September 4, 2003, on the issue of defendant's competence to stand trial, and will not be repeated here.

Footnote 2: Such a rule would have been at odds with federal law on the subject and would almost certainly have involved a declaration of a new state constitutional right. (See discussion infra at 375 n 4, and accompanying text.)

Footnote 3: In Armstrong, however, the Wisconsin Supreme Court chose not to apply the McCormick factors in reaching its determination of the issue of allocation of the burden of proof on custody. (See discussion of State v Armstrong, supra at 371.)

Footnote 4: In any event, it is the responsibility of the Court of Appeals, not trial courts, to afford recognition to new constitutional rights under the State Constitution. (People v Keta, 165 AD2d 172 [2d Dept 1991], revd on other grounds 79 NY2d 474 [1992]; see Hynes v Tomei, 237 AD2d 52 [2d Dept 1997], revd on other grounds 92 NY2d 613 [1998], cert denied 527 US 1015 [1999].)