LAW OFFICES OF LAWRENCE J STOCKLER, PC v ROSE

Docket Nos. 97839, 98058. Submitted June 16, 1988, at Detriot.
Decided January 3, 1989. Leave to appeal applied for.

Law Offices of Lawrence J. Stockler, P.C. brought an action in the
Oakland Circuit Court against David S. and Sydney Rose to
recover attorney fees earned in representing the Roses in
various transactions. The Roses filed a counterclaim alleging
malpractice in the handling of two matters. Stockler filed a
third-party complaint against James H. Hudnut and Hudnut
and Ravitz, P.C. for contribution. The court, Norman L. Lippitt,
J., granted a judgment for plaintiff for attorney fees, a judg-
ment for the Roses for malpractice and a judgment of no cause
of action on plaintiff's third-party claim. Plaintiff appealed each
adverse judgment separately. Defendants cross-appealed. The
appeals were consolidated by the Court of Appeals.

The Court of Appeals *held:*

1. A new trial is not warranted because of judicial bias or
misconduct since the court did not improperly question wit-
nesses during trial and since plaintiff did not pursue the
remedy provided for in such cases in the court rules.

2. The court erred in admitting certain testimony as state-
ments against interest. However, since the testimony would
have been admissible to show that the statements were made,
their admission for an erroneous reason was harmless.

3. The trial court properly held that the malpractice action

REFERENCES

Am Jur 2d, Accountants §§ 15 *et seq.*; Attorneys at Law §§ 197 *et
seq.*, 225; Damages §§ 45-49, 130-132, 674, 762 *et seq.*; Fraud and
Deceit §§ 12 *et seq.*; Judges §§ 166 *et seq.*, 222; Limitations of
Actions §§ 102-106; Trial § 88;

Validity and construction of state statute or rule allowing or
changing rate of prejudgment interest in tort actions. 40 ALR4th
147.

Admissibility and necessity of expert evidence as to standards of
practice and negligence in malpractice action against attorney. 14
ALR4th 170.

Allowance of punitive damages in action against attorney for
malpractice. 13 ALR4th 95.

Manner or extent of trial judge's examination of witness in civil
cases. 6 ALR4th 951.

was not defeated by a meritorious statute of limitations defense in one of the underlying actions.

4. Damages in the malpractice claim against plaintiff involving an underlying action against a negligent accounting firm supplying an inaccurate financial statement should have been based on the accountant's liability to third parties only to the extent that they are damaged in a transaction for which the third party 1) is intended to rely on the financial statement provided, 2) does so rely on the statement, and 3) is damaged because of that reliance. Also the court awarded damages deemed by the Court of Appeals to be too speculative and remote. Damages were adjusted accordingly.

5. The court properly denied statutory prejudgment interest on defendants' claim of legal malpractice based on the suit within a suit theory.

6. The court properly refused to grant the Roses damages based on the benefit of the bargain in their malpractice action based on the mishandling of their underlying suit for negligent misrepresentation. The proper measure of damages in the underlying action is pecuniary loss, not loss of benefit.

7. The court properly refused to allow defendants to present evidence on the issue of exemplary damages because the pleadings were deficient.

8. Expert testimony is usually required in a legal malpractice action to establish the requisite standard of conduct and breach thereof. However, where the absence of professional care is so manifest that within the common knowledge and experience of an ordinary layman it can be said that the defendant was careless, a plaintiff can maintain a malpractice action without offering expert testimony. The court's ruling on when expert testimony was needed to show a standard of conduct and breach thereof with regard to the allegations of legal malpractice were correct.

9. The court's evidentiary findings to support the damages awarded to defendants with regard to one of the claims for malpractice were proper.

10. The other claims of error were baseless.

Affirmed in part, modified in part and remanded.

1. JUDGES — DISQUALIFICATION OF JUDGES — COURT RULES.
   The procedure provided by MCR 2.003 for disqualification of a trial judge because of bias or prejudice against a party or his attorney is exclusive and must be followed (MCR 2.003).

2. JUDGES — DISQUALIFICATION OF JUDGES — COURT RULES — APPEAL.
   An order denying a party's motion for disqualification of the

judge is to be reviewed by the chief judge of the court and decided by de novo review of the record (MCR 2.003[C][3][a]).

3. TRIAL — JUDICIAL QUESTIONING OF WITNESSES.

A trial judge may interrogate witnesses, whether called by a party or the court itself, to produce fuller and more exact testimony, to clarify points and to elicit additional facts (MRE 614[b]).

4. ATTORNEY AND CLIENT — LEGAL MALPRACTICE.

The suit within a suit concept is properly employed in a suit for legal malpractice where the client's injury stems from the fact that he sustained an adverse judgment in an underlying suit; the client receiving the adverse judgment must establish that his attorney's negligence was a proximate cause of the injury by showing that, but for the act or omission complained of, the client would have been successful in the underlying suit.

5. TORTS — NEGLIGENT MISREPRESENTATION.

Proof of negligent misrepresentation requires proof that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care.

6. WORDS AND PHRASES — MALPRACTICE.

The term "malpractice" denotes a breach of the duty owed by one in rendering professional services to a person who has contracted for such services.

7. ACCOUNTS AND ACCOUNTING — LIMITATION OF ACTIONS.

An action by a third party against an accountant alleging negligence in the making of an audited financial statement resulting in harm to the plaintiff, who relied on its accuracy, is governed by the three-year period of limitations applicable to negligence cases (MCL 600.5805[8]; MSA 27A.5805[8]).

8. DAMAGES — TORTS.

Generally, a tortfeasor is liable for all injuries resulting directly from his wrongful act provided that the damages are the legal and natural consequences of the wrongful act and are such as, according to common experience and the usual course of events, might reasonably have been anticipated.

9. ACCOUNTS AND ACCOUNTING — DUTY — TORTS.

An accountant has a duty to exercise reasonable care and competence in obtaining and communicating an audited financial statement and is liable for damages for the breach of that duty to all for whose benefit and guidance the statement is supplied

or those to whom the accountant knows the recipient intends to supply it for influencing a transaction who rely on the statement to their detriment in the transaction intended.

10. DAMAGES — PREJUDGMENT INTEREST — LEGAL MALPRACTICE.

Statutory prejudgment interest is not recoverable as an element of damages in a legal malpractice suit (MCL 600.6013; MSA 27A.6013).

11. DAMAGES — NEGLIGENT MISREPRESENTATION.

An injured party is not entitled to recover the benefit of the bargain lost as a result of negligent misrepresentation; the proper measure of damages is the pecuniary loss suffered in reliance upon the misrepresentation.

12. DAMAGES — EXEMPLARY DAMAGES.

Exemplary damages are compensation for intentional or reckless injury to feelings causing humiliation, outrage and indignity; exemplary damages are not recoverable where compensatory damages make the injured person whole.

13. ATTORNEY AND CLIENT — LEGAL MALPRACTICE — STANDARD OF CONDUCT — EXPERT TESTIMONY — EVIDENCE.

Expert testimony is usually required in a legal malpractice action to establish the requisite standard of conduct and breach thereof; however, where the absence of professional care is so manifest that within the common knowledge and experience of an ordinary layman it can be said that the defendant was careless, a plaintiff can maintain a malpractice action without offering expert testimony.

*Lawrence J. Stockler & Associates, P.C.* (by *Michael C. Crowley*), for plaintiff.

*May, Gowing & Simpson* (by *Delmer C. Gowing, III,* and *Allison D. Daniels*), for defendant.

*Buesser, Buesser, Blank, Lynch, Fryhoff & Graham* (by *William R. Buesser* and *Neil R. Disney*), for James H. Hudnut and Hudnut & Ravitz, P.C.

Before: SHEPHERD, P.J., and HOLBROOK, JR., and SULLIVAN, JJ.

SHEPHERD, P.J. Plaintiff, Law Offices of Law-

rence J. Stockler, P.C., appeals as of right from a judgment following a bench trial in the Oakland Circuit Court. Stockler sued defendants David and Sydney Rose, his wife, to recover legal fees. The Roses filed a counterclaim for legal malpractice in two matters: (1) Stockler's representation of the Roses in their suit against Touche Ross and Company (hereafter referred to as the Touche Ross case); and (2) Stockler's defense of Sydney Rose in a garnishment proceeding initiated by Hammond Organ Company (hereafter referred to as the Hammond Organ case). Stockler responded by amending the complaint to add a third-party complaint against James Hudnut and Hudnut and Ravitz, P.C. (hereafter collectively referred to as Hudnut) who also represented Sydney Rose in the Hammond Organ case. After an extensive trial, the court entered judgments awarding Stockler legal fees of $13,727.98 and granting Hudnut a judgment of no cause of action. The Roses were awarded $150,000 in the Hammond Organ case and $761,671.41 in the Touche Ross case plus statutory interest of $420,394.59 for a total judgment of $1,332,066.

On appeal, Stockler raises various issues pertaining to all three judgments, and the Roses cross-appeal from their judgment seeking an increase in the award for Stockler's legal malpractice. We affirm the judgments but reduce the damages awarded to the Roses in the Touche Ross case and remand for an evidentiary hearing and decision relating to the damages awarded to the Roses in the Hammond Organ case.

This was a long and complex case stemming from Stockler's representation of the Roses in various legal matters relating to David Rose's decision to purchase the assets of a publicly held company through his own corporation formed for

the sole purpose of making the purchase. The corporation went bankrupt and the Roses were exposed to substantial financial losses as a result of their decision to personally guarantee millions of dollars loaned by various lending institutions to the corporation. Stockler's services were retained by the Roses in their effort to recover their personal losses from various parties participating in the purchase transaction. Eventually, there was a breakdown in the attorney-client relationship between Stockler and the Roses which resulted in the instant lawsuit.

Because of the complexity of this case we summarize our holdings at this early stage of the opinion as follows:

Stockler claims that a new trial is required as a result of bias and judicial misconduct. We have rejected this claim for the reasons that plaintiff did not pursue the remedy provided for in MCR 2.003(C)(3)(a) and the trial judge did not improperly question witnesses during the course of the trial.

In the Touche Ross case, Stockler claims that reversal is required as a result of an evidentiary error. We have rejected this argument for the reason that the error was harmless.

Both Stockler and the Roses contest the $761,671.41 award for damages in favor of the Roses in the Touche Ross case, which was determined by the court pursuant to the "suit within a suit" concept. Stockler claims that the award should be reversed in toto or, alternatively, reduced by $588,000. The Roses claim that the award should be increased by about $2.6 million.

We have rejected the Roses' claim for the reasons that: (1) the Roses cannot recover statutory prejudgment interest under the suit within a suit concept where they had no money judgment

against Touche Ross; and (2) the equities do not justify piercing the corporate veil so as to allow the Roses to stand in the shoes of the corporation and, in any event, the corporation could not recover benefit-of-the-bargain damages from Touche Ross based on its negligent misrepresentations.

We have also rejected Stockler's claim that the award should be reversed in toto for the reason that the Roses' lawsuit against Touche Ross was not barred by the passage of time. However, we have reduced the amount of the award by $593,471.41 for the reasons that: (1) Touche Ross could not be held legally responsible for speculative and remote damages; (2) losses incurred by the Roses without the requisite act of justified reliance on Touche Ross' negligent misrepresentation are not recoverable; (3) in one instance, the claim was withdrawn during the trial; and (4) certain of the trial court's factual findings were clearly erroneous.

In both the Touche Ross and Hammond Organ cases, the Roses seek a remand for a determination of exemplary damages caused by Stockler's legal malpractice. We have rejected this claim for the reason that there was no finding of recklessness and, in any event, the court correctly ruled not to admit proofs of exemplary damages because the pleadings were inadequate.

In the Hammond Organ case, Stockler claims that the award of $150,000 in favor of the Roses should be reversed in toto because the Roses did not present expert testimony to establish his professional negligence in representing Sydney Rose. We have rejected this claim for the reason the expert testimony was not necessary for the Roses to establish their case. However, we have found merit in the point raised by Stockler pertaining to his legal responsibility for the damages and have

concluded that the trial court clearly erred in awarding the full obligation of $150,000 that the Roses agreed to pay to Hammond Organ. Stockler was not responsible for David Rose's individual liability or any payments made by David Rose that did not require joint assets or Sydney Rose's individual assets. We have remanded this case to the trial court for a determination of damages.

In the Hammond Organ case, Stockler also claims that he should have been awarded indemnification or contribution from Hudnut. We have rejected this claim for the reason that the trial court did not clearly err in finding that Stockler failed to prove Hudnut's legal malpractice in his representation of Sydney Rose.

Stockler also claims that he should have been awarded $122,823.06 in attorney fees for his representation of the Roses in various matters. The trial court allowed $13,727.98. We affirm the award for the reasons that: (1) Stockler's claim that a pretrial motion for summary judgment should have been granted is not properly before this Court inasmuch as there is no signed order; (2) the trial court did not abuse its discretion in ruling not to enter a default judgment against the Roses inasmuch as there was no default; and (3) the trial court did not clearly err by giving effect to the contingency fee agreements underlying two elements of Stockler's claim for damages.

Finally, we have declined to address Stockler's claim that the Roses' counterclaim for legal malpractice should be dismissed for the reason that Stockler did not raise this issue in the trial court.

I

TRIAL COURT'S CONDUCT

A. JUDICIAL DISQUALIFICATION

Stockler raises three issues relating to the trial

judge's alleged lack of impartiality to hear and decide this case: (1) whether the trial judge erred in refusing to disqualify himself prior to trial on the basis of personal bias or prejudice; (2) whether the trial record reveals actual bias or prejudice against Stockler; and (3) whether the trial judge erred in refusing to grant his motion for a new trial before a different judge made on the basis of bias or prejudice during the course of the trial and an anonymous phone call Stockler received wherein the caller allegedly told Stockler that the trial judge discussed the case with his brother-in-law.

The record reveals that the trial judge informed Stockler prior to trial that David Rose was a personal friend of the judge's brother-in-law, but was not a social acquaintance of the judge. The trial judge also informed Stockler that he had, at one time, consented to allowing his brother-in-law to lend David Rose $5,000 out of a deceased relative's estate and that this money was repaid. Stockler's motion for disqualification was denied and the case proceeded to trial a few days later. During the course of trial, Stockler represented himself as an advocate and also testified as a witness. The trial judge's remarks did reflect some irritation with Stockler's behavior as an advocate, but also reflected the trial judge's efforts to keep the trial proceeding in an orderly manner. At the December 16, 1986, posttrial hearing on Stockler's motion for a new trial, the trial judge denied the motion, stating that his decision was unbiased and that he did not discuss the merits of the case with his brother-in-law or anyone else. The trial judge indicated only that his brother-in-law told him that he had not seen the Roses lately.

MCR 2.003 governs the procedure for disqualifying a judge due to a lack of impartiality to hear a

case. This procedure is exclusive and must be followed. *Czuprynski v Bay Circuit Judge,* 166 Mich App 118, 124; 420 NW2d 141 (1988). Personal bias or prejudice for or against a party is a ground for disqualification. MCR 2.003(B)(2). The party seeking disqualification must timely file a written motion including all known grounds for disqualification. MCR 2.003(C)(1) and (2). The motion is then decided according to the following procedure:

> (3) Ruling. The challenged judge shall decide the motion. If the challenged judge denies the motion,
> (a) in a court having two or more judges, on the request of a party, the challenged judge shall refer the motion to the chief judge, who shall decide the motion de novo; [MCR 2.003(C)(3)(a).]

On appeal, the chief judge's decision is reviewed for an abuse of discretion. *People v Bero,* 168 Mich App 545, 549; 425 NW2d 138 (1988). Here, Stockler twice moved to disqualify the trial judge but did not seek a de novo hearing before the chief judge of Oakland County. Indeed, the record reveals that Stockler also moved to disqualify the trial judge from presiding over a different case and any other action which Stockler or his law firm may handle based on the trial judge's alleged bias and prejudice in this case, that Stockler obtained a de novo review before the chief judge, and that Stockler then successfully moved to vacate the chief judge's decision based, in part, on an argument that the entry of the chief judge's order might prejudice this appeal. Having failed to pursue the remedy provided by MCR 2.003(C)(3)(a), Stockler waived any claim of disqualification. Even if we were to address the merits we find nothing in Stockler's allegations that rises to the level of actual bias or the appearance of impropriety on the part of the trial judge.

### B. QUESTIONING WITNESSES

Stockler also contends that the trial judge improperly asked witnesses questions crucial to the Roses' case and that this unfairly prejudiced him. We disagree. A trial judge has a duty to exercise reasonable control over the interrogation of witnesses and the presentment of the evidence in order to make the interrogation and presentment effective for the ascertainment of the truth. MRE 611(a)(1). Further, the court may properly interrogate witnesses, whether called by the party or the court itself. MRE 614(b). Questions designed to clarify points and to elicit additional relevant evidence, particularly in a nonjury trial, are not improper. See *People v Baker,* 157 Mich App 613, 617; 403 NW2d 479 (1986), and *Meyering v Russell,* 53 Mich App 695, 701; 220 NW2d 121 (1974), rev'd on other grounds 393 Mich 770 (1974).

This was a particularly long and complex case and the trial judge, as the trier of fact, was faced with a wide variety of issues to resolve. The questions asked were designed to clarify testimony and to gain an understanding of essential facts. Under these circumstances, we can find no error.

### II

### THE *TOUCHE ROSS* CASE

Before discussing the facts of the Roses' malpractice claim against Stockler stemming from his handling of their suit against Touche Ross, we must point out that Stockler does not dispute for purposes of this appeal that there is evidence to support the trial court's finding of legal malpractice and that the nature of Stockler's professional negligence was his "failure to exercise reasonable skill, care, discretion and judgment in the manner in which he formulated and filed the answers to

interrogatories submitted by Touche-Ross which resulted in the dismissal of the Roses' claim."[1] The issues raised on appeal primarily relate to the damages the Roses can recover for Stockler's malpractice. The trial court determined damages by applying a suit within a suit concept. See generally *Basic Food Industries, Inc v Grant,* 107 Mich App 685; 310 NW2d 26 (1981), lv den 413 Mich 913 (1982); *Ignotov v Reiter,* 425 Mich 391, 404-406; 390 NW2d 614 (1986) (RILEY, J., dissenting). This concept has vitality in a limited number of circumstances, with one objective of the concept being to satisfy the requirement that the client prove damages based on factual evidence, rather than mere speculation. *Basic Food, supra,* p 693, n 2. The suit within a suit concept is appropriate where, as here, the client's injury stems from the fact that he sustained an adverse judgment in the underlying suit. *Knoblauch v Kenyon,* 163 Mich App 712; 415 NW2d 286 (1987). The client receiving the adverse judgment must establish that his attorney's negligence was a proximate cause of the injury by showing that, but for the act or omission complained of, the client would have been successful in the underlying suit. *Basic Food, supra.*

The trial court in this case applied the four part test for legal malpractice in *Basic Food, supra,* p 690, which requires that the client prove "(1) the existence of the attorney-client relationship; (2) the acts which are alleged to have constituted the negligence; (3) that the negligence was the proximate cause of the injury and; [sic] (4) the fact and extent of the injury alleged." Although, under Michigan law, the language "the proximate cause" in element three should be "a proximate cause," *Ignotov, supra,* p 402, n 1, we find the trial court's

---

[1] This Court affirmed the dismissal in *Rose v Touche Ross & Co,* unpublished opinion per curiam of the Court of Appeals, decided January 6, 1984 (Docket No. 66959), lv den 419 Mich 902 (1984).

reliance on the the proximate cause language of *Basic Food* harmless in this case since Stockler's negligence was the only cause of the Roses' not being able to present their claims in the Touche Ross matter. Similarly, the evidence demonstrates that Stockler was the sole cause of the losses in the Hammond Organ case discussed *infra.*

In the Touche Ross case, the particular damages alleged were financial losses the Roses suffered as a result of their inability to recover damages from Touche Ross due to the dismissal of their case. Hence, in order to review Stockler's and the Roses' claims on appeal pertaining to the damages of $761,671.41 awarded by the trial court, it is necessary to review the facts underlying the Roses' suit against Touche Ross.

### A. FACTS

The Roses' suit against Touche Ross stemmed from the sale of the assets of a publicly held company known as American Music Stores (AMS) on June 8, 1976. Touche Ross, a public accounting firm, was hired by AMS to prepare audited financial statements, including annual 10-K and quarterly 10-Q financial reports required by the Securities and Exchange Commission. David Rose was then president of a jewelry corporation known as Churchill's and, along with his wife, Sydney, owned all the outstanding common stock of Churchill's. In May of 1975, David Rose was contacted by AMS's general counsel regarding any interest he might have in purchasing AMS.

David Rose subsequently obtained AMS's 10-K report for the fiscal year ending July 31, 1974, and expressed an interest in making the acquisition. In preparation, he hired Frederick Hoops as an acquisition attorney and Coopers and Lybrand, a public

accounting firm, to act as his financial advisor. In November of 1975, Rose and Hoops met with a partner of Touche Ross. During that meeting, they obtained a copy of the 10-K report for the year ending July 31, 1975. The report contained Touche Ross' opinion that the financial statements fairly presented the consolidated financial position of AMS and its subsidiaries in conforming with generally accepted accounting principles applied on a consistent basis. Negotiations for the purchase then continued as Rose and his advisors met with lending institutions to obtain financing.

Although financing arrangements were incomplete, David Rose ultimately arrived at a business plan for the purchase of AMS. On December 8, 1975, David Rose formed a corporation known as Grinnell Brothers, Inc. (GBI), solely for the purpose of receiving all the assets and assuming the liabilities of AMS. On December 17, 1985, David Rose, as the president of GBI, executed a purchase agreement. The $50,000 required at that time was borrowed by David Rose from his father, Emil Rose. David Rose's plan to finance the balance needed for GBI to acquire AMS included liquidating and transferring certain assets of Churchill's to GBI, selling certain assets or divisions to be acquired by GBI as a result of the purchase and borrowing from various lending institutions, with the amounts borrowed by GBI personally guaranteed by the Roses.

After the purchase agreement was executed, David Rose continued to work towards obtaining financing. In February, 1976, David Rose received a pro forma financial report of GBI prepared by Coopers and Lybrand. David Rose needed the report for his lenders. The report was prepared based on the 1975 10-K report, on unaudited financial information for other periods, and on assump-

tions concerning future transactions. The report assumed that GBI would acquire Churchill's as of the date of acquisition, and projected that GBI and Churchill's combined excess assets over liabilities on April 1, 1976, the planned date of the acquisition, would be about $7.34 million. David Rose obtained an extension on the closing date of the acquisition and, on June 8, 1976, the sale was closed. On June 24, 1976, the Roses assigned and transferred their common stock in Churchill's to GBI.

David Rose assumed the chairmanship of GBI upon closing and began operations. Within four months of the closing, he noticed certain irregularities regarding the inventory purchase requirements. He requested that Coopers and Lybrand conduct a review of GBI's financial condition as of the June 8, 1976, closing date. Although Coopers and Lybrand did not complete the work, their preliminary draft of the financial statement indicated that GBI's excess assets over liabilities was only $1.5 million. This difference between the April 1, 1976, pro forma report and the June 8, 1976, preliminary report resulted from an overstatement of assets in Touche Ross' 1975 10-K report. In particular, Edward Premo, Cooper and Lybrand's partner in charge of the financial review, opined during trial that obsolete and damaged inventory was not accounted for, that the reserve for doubtful accounts receivable was inadequate, that accounts receivable improperly contained unearned financing charges on installment sales contracts of about $1.5 million and that trial purchases of musical instruments by customers were improperly recorded as full and complete sales.

In June of 1977, David Rose, individually, and

GBI brought suit against AMS in federal court. They settled one year later for $1.6 million.

In August of 1977, David Rose caused a bankruptcy petition to be filed on behalf of GBI. The board of directors of GBI thereafter was composed of a number of creditors while David Rose stayed on as chief operating officer. GBI was finally liquidated in April, 1981.

On December 15, 1978, the Roses, individually, and GBI commenced suit against Touche Ross in Oakland Circuit Court asserting various theories of fraud, negligent misrepresentation and breach of contract. By the fall of 1981, GBI settled in bankruptcy with Touche Ross for $20,000 and Stockler was representing the Roses, individually. The Roses' claims were dismissed in August, 1982, as a result of their deficient answers to certain interrogatories.

The trial judge in the instant case, applying the suit within a suit concept to the Roses' legal malpractice claim against Stockler, found that Touche Ross negligently made material misrepresentations in the 1975 10-K report that were relied on by the Roses in their decision to form and fund GBI for the purpose of purchasing of AMS. The final judgment reflects that the court awarded the Roses $761,671.41 in damages. Both Stockler and the Roses claim error relating to that award. In addition, Stockler raises one evidentiary issue.

### B. STOCKLER'S EVIDENTIARY CLAIM

At trial, Stockler objected to David Rose's testimony about what Touche Ross representatives told him about certain 10-Q reports, and the trial court permitted the testimony as admissions against interest in the Roses' underlying lawsuit against Touche Ross. David Rose testified that the repre-

sentatives confirmed that Touche Ross was preparing the 10-Qs based on financial statements they received from AMS and that the 10-Qs fairly reflected AMS's assets and liabilities. There was no showing that the declarants were unavailable as witnesses and that the statements made were contrary to the declarants' interests at the time of making and, thus, we agree that the trial court erred in admitting the testimony as statements against interest. See MRE 804(a) and (b)(3). However, the tort involved in the underlying suit, negligent misrepresentation, was one requiring proof that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care. *Raritan River Steel Co v Cherry, Bakaert & Holland,* 322 NC 200; 367 SE2d 609 (1988).

Here, David Rose's testimony regarding statements made by Touche Ross representatives was used to show that they were made and was probative of his state of mind, that is, whether David Rose justifiably relied on financial information supplied by Touche Ross. The testimony was not offered to prove the truth of the matter asserted, i.e., that the 10-Qs were accurate, and, thus, was not hearsay. MRE 801(c). Accordingly, while the basis relied on by the trial court in allowing admission was in error, we conclude that the error was harmless. See MCR 2.613(A). Further, we find no merit in Stockler's claim that the trial court's ruling opened the door to the admission of financial documents prepared by Touche Ross without authentication. Evidentiary objections must be made timely, stating the specific ground of objection. MRE 103(a)(1). Stockler made no objection to the authenticity of the two documents he now suggests were admitted in error and, thus, the

admissibility of those documents was not properly preserved for appellate review.

## C. STOCKLER'S STATUTE OF LIMITATIONS DEFENSE

Pursuant to the suit within a suit concept, Stockler contends that the Roses would not have succeeded in their law suit against Touche Ross because Touche Ross had a good statute of limitations defense and, hence, the Roses can recover no damages. We disagree and hold that the Roses' lawsuit against Touche Ross was not barred by the statute of limitations.

Stockler argues that the Roses' law suit was barred by the two-year limitation period of the Revised Judicature Act, MCL 600.5805(4); MSA 27A.5805(4), for injuries to persons or property in an action charging malpractice. The trial court held that the Roses' lawsuit sounded in negligence and, hence, the three-year limitation period for "all other actions" in MCL 600.5805(8); MSA 27A.5805(8) applied.[2] Stockler does not dispute that the limitation period commenced to run within three years of the date the Roses commenced their lawsuit against Touche Ross and, thus, we need only decide whether the two-year limitation period for malpractice applies.[3]

[2] Although frequently referred to as the "negligence" statute of limitations, MCL 600.5805; MSA 27A.5805 expressly applies only to actions to recover damages for injuries to persons or property. The focus is on the nature of the injury, and not the label attached to the claim. To the extent that the Roses seek damages for financial losses, the six-year limitation period for other personal actions may apply. See MCL 600.5813; MSA 27A.5813; *Bacco Construction Co v American Colloid Co*, 148 Mich App 397; 384 NW2d 427 (1986). Nevertheless, this issue was not raised and, thus, we do not address it.

[3] Stockler argues that David Rose knew of substantial damages at the June 8, 1976, closing, i.e., David Rose alleged in his federal suit against AMS that he discovered AMS's policy regarding unearned finance charges before closing and, hence, the limitation period began at least as of the date of closing. Stockler also suggests that the trial

"Malpractice" is not defined in the Revised Judicature Act and, thus, the definition is determined by resort to the common law. *Dennis v Robbins Funeral Home,* 428 Mich 698, 702; 411 NW2d 156 (1987). Malpractice denotes a breach of duty owed by one in rendering professional services to a person who has contracted for such services. *Rogers v Horvath,* 65 Mich App 644, 646-647; 237 NW2d 595 (1975), lv den 396 Mich 845 (1976), and see *Becker v Meyer Rexall Drug Co,* 141 Mich App 481, 484-485; 367 NW2d 424 (1985), lv den 423 Mich 852 (1986). Since there was no contractual relationship between the Roses and Touche Ross in the instant case, we conclude that the Roses' lawsuit sounded in negligence and not malpractice. Accordingly, the two-year limitation period of MCL 600.5805(4); MSA 27A.5805(4) was inapplicable and the Roses' lawsuit against Touche Ross was not barred by it.

### D. STOCKLER'S OBJECTIONS TO DAMAGES

Pursuant to the suit within a suit concept, the trial court awarded the Roses $761,671.41 based on a finding that the Roses could have recovered that amount from Touche Ross for negligent misrepresentations in the 1975 10-K report. On appeal, Stockler challenges the trial court's factual findings relating to four specific items of damages.

court did not adequately consider this allegation in his opinion. Although the trial judge did not expressly refer to David Rose's allegation in the federal suit, the issue of what David Rose knew at the closing was extensively litigated at trial, and the court made a specific finding after "assessing the evidence presented" and the testimony that David Rose was aware of certain discrepancies in the 1975 10-K report, including "hidden unearned finance charges," but was not on notice that the representations in the report were negligently made and did not know of the magnitude of the discrepancies until after the closing. Accordingly, the trial judge's factual findings were adequate and we limit our review to Stockler's claim that a two-year limitation period applies.

The trial court's factual findings may not be reversed unless clearly erroneous. MCR 2.613(C). A finding is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Precopio v Detroit,* 415 Mich 457, 462; 330 NW2d 802 (1982). In so holding, due regard is given to the trial court's superior vantage point to evaluate credibility. *Id.,* p 462; *Meyering, supra,* p 701. From our examination of the record, we are left with a definite and firm conviction that the trial court erred in awarding $593,471.41 of the damages challenged by Stockler and, thus, reduce the award to $168,200 plus the appropriate statutory prejudgment interest.

## 1. THE APPLICABLE LAW

Since Stockler raises issues concerning whether he can be held legally responsible for certain damages and whether the proofs on other damages were too speculative, the first issue we must decide is the appropriate standard to apply in reviewing Touche Ross' liability to the Roses. As previously stated, the tort underlying the Roses' lawsuit against Touche Ross, negligent misrepresentation, was one requiring proof that a party justifiably relied to his detriment on information provided without reasonable care by one who owed the relying party a duty of care. *Raritan River Steel Co, supra.* As with any tort action, recovery is not permitted for remote, contingent or speculative damages. *Sutter v Biggs,* 377 Mich 80, 86; 139 NW2d 684 (1966). Generally, the tortfeasor is liable for all injuries resulting directly from his wrongful act provided that the damages are the legal and natural consequences of the wrongful act and are such as, according to common experience

and the usual course of events, might reasonably have been anticipated. *Id.*, p 86. This requirement of a cause and effect relationship between the wrongful act and injury where, as here, a negligent tort is involved, requires both causation in fact and proximate causation, the latter of which involves the question of whether the defendant should be held legally responsible for the injury. *Richards v Pierce,* 162 Mich App; 308, 315; 412 NW2d 725 (1987). Like the element of duty in a negligence action,[4] the legal concept of proximate causation depends in part on foreseeability, that is, whether the risk of harm to the victim was foreseeable and whether the result of that conduct and any intervening causes were foreseeable. *Moning v Alfono,* 400 Mich 425, 439-440; 254 NW2d 759 (1977).

The tort action in this case arises out of Touche Ross' contractual relationship with AMS to give an opinion on the representations in AMS's financial statements for purposes of the 1975 10-K report required by the SEC. Although addressed in other states, Michigan has not yet passed on an accountant's third-party liability for ordinary negligence under such circumstances. The trial court in this case held that Touche Ross was liable because the Roses were foreseeable third parties who had relied to their detriment on the report in order to obtain financing for GBI to purchase AMS. In so doing, the trial court adopted the broad standard of duty adopted by our Supreme Court in *Williams*

---

[4] Duty is essentially a question of whether the relationship between the actor and injured party gives rise to any legal obligation on the actor's part for the benefit of the injured person. *Moning v Alfono,* 400 Mich 425, 438-439; 254 NW2d 759 (1977). It often reflects policy considerations which lead the law to say that a particular injured person is entitled to protection. *Duvall v Goldin,* 139 Mich App 342, 349; 362 NW2d 275 (1984), lv den 422 Mich 976 (1985), and see *Williams v Cunningham Drug Stores, Inc,* 429 Mich 495, 499; 418 NW2d 381 (1988).

*v Polgar,* 391 Mich 6; 215 NW2d 149 (1974), for an abstractor, who, pursuant to a professional contract, certifies the condition of the record of title for a particular piece of property. The Court held that the abstractor's duty to perform abstracting duties in a diligent and reasonably skillful, workmanlike manner extended to all those persons that an abstractor could reasonably foresee relying on the accuracy of the abstract. *Id.,* p 22.

In addition to *Williams,* the trial court in the instant case also relied, in part, on *Rosenblum, Inc v Alder,* 93 NJ 324; 461 A2d 138; 35 ALR4th 199 (1983), one of the few courts that have extended an accountant's third-party liability on audited financial statements to all reasonably foreseeable persons, at least where the third party is a foreseeable user who receives the audited statement from the business entity for a proper business purpose to influence a business decision of that user. The majority of modern courts addressing this issue and finding that the lack of privity will not bar a recovery have adopted a more restricted scope of liability as set forth in the Restatement Torts, 2d, § 552, for suppliers of information. See *Raritan River Steel Co, supra; Badische Corp v Caylor,* 825 F2d 339 (CA 11, 1987) (applying Georgia law); *Shatterproof Glass Corp v James,* 466 SW2d 873; 46 ALR3d 968 (Tex Civ App, 1971). Section 552 states:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Hence, under § 552, the knowledge of the supplier of information, here Touche Ross, and the particular transaction that the supplier or recipient, here AMS, intends to influence takes on critical significance in determining the scope of the supplier's liability. The reasons for taking this more restricted approach in third-party actions against the accountant have been a recognition that the financial statements themselves are the representations of the client (with the auditor's liability arising from the opinion rendered concerning the accuracy of the client's records) and the accountant's inability to control the distribution of the report or the contents of some of the statements he is assessing. *Raritan River Supply Co, supra.*

For the reasons stated in *Raritan River Supply Co,* we adopt Restatement Torts, 2d, § 552, as the minimum standard applicable in reviewing the scope of an accountant's potential third-party liability for negligent misrepresentation. Since the trial court here made a specific factual finding that Touche Ross knew that the Roses relied on

the 1975 10-K report for purposes of financing the purchase of AMS, we find it unnecessary to address whether a broader standard of foreseeability should be adopted. The facts of this case fall squarely within the Restatement test. Pursuant to these principles, we next consider the specific items of damages challenged by Stockler.

## 2. THE DAMAGES

Stockler contends that the trial court erred in awarding $240,191.41 to the Roses for their indebtedness on a small business loan from the Small Business Administration (SBA) made by the United States government to Churchill's.[5] We agree.

Although the amount of the loan outstanding varied as additional monies were borrowed for Churchill's' working capital needs and repayments were made by Churchill's, it was not disputed that the loan to Churchill's was made and guaranteed by the Roses prior to the Roses' receipt of the 1975 10-K report on which the Roses relied in making their financing decisions. While the trial court's finding that the Roses still owed the United States government on the SBA loan as a result of Touche Ross' misrepresentation (that is, there were no assets with which to repay the SBA loan) may be correct, this, at best, supports only a finding that Touche Ross' negligent misrepresentation was a cause in fact of the Roses' personal inability to repay the United States government the amount of $240,191.41. The decision to personally guarantee the SBA loan was not made based on the 1975 10-K report and, thus, there was no act of justifiable reliance on the part of the Roses resulting in

[5] Although the trial court awarded the Roses $280,000 in its opinion, the final judgment reflected an award of $240,191.41, which was the amount of a judgment rendered in favor of the United States in 1984 on the Roses' personal guarantee.

liability being imposed upon them for which Touche Ross could be held legally responsible.

The Roses were already liable to the SBA when they relied on Touche Ross. No evidence was presented that it was reasonably foreseeable that when Touche Ross delivered the false statements to David Rose, the Rose/SBA relationship would be adversely affected. Liability under the Restatement is limited to the transaction in question and, absent clear evidence that the party furnishing the information regarding one transaction knows that another transaction will be affected, there can be no liability on transactions not the subject of the false information. Since Touche Ross would not be liable to the Roses on the SBA loan, Stockler is also not liable to them. Accordingly, the trial court clearly erred in awarding $240,191.41 to the Roses on the SBA transaction.

Stockler also contends that the trial court erred in awarding $15,000 in legal fees paid by David Rose in connection with litigation on the SBA loan. The precise nature of the litigation is unclear from the record and the trial court made no specific factual findings on this element of damages other than to state that it related to David Rose's personal guarantee. The claim for $15,000 was first raised during the course of the trial, then withdrawn by Rose's attorney upon Stockler's objection as follows:

> *Q. [The Roses' attorney]*: Is there any other loss, not unpaid debt or expense but any other loss that you personally are claiming as a result of the Touche-Ross [malpractice] claim?
>
> *A. [David Rose]*: . . . There's also, Mr. Gowing, $15,000 in legal expenses for Dykema, Gossett who's representing me in connection with the SBA.
>
> *The Court*: We already . . . .

[*The Roses' attorney*]: Yes, we discussed that, Your Honor.

*Witness*: Okay, I'm not sure whether . . . .

[*The Roses' attorney*]: We'll withdraw that claim.

Since the claim was withdrawn, it was clearly erroneous for the trial court to award this item of damages to the Roses.

Stockler also contends that the trial court erred by including a $120,000 loan made to David Rose by his father, Emil Rose. The loan was composed of two separate debts, one for $50,000 and another for $70,000. With respect to the $50,000 indebtedness, we find no clear error since the $50,000 was borrowed by David Rose for the specific purpose of making a down payment on the purchase of AMS. Essentially, the $50,000 was David Rose's capital investment in GBI, the corporation formed for the specific purpose of purchasing AMS. Because there was evidence that Touche Ross knew that David Rose would be relying on the 1975 10-K in making his personal financial decisions relating to GBI's purchase of AMS, David Rose's loss of his capital investment was a legal and natural consequence of Touche Ross' negligence. Accordingly, the trial court did not clearly err in awarding $50,000 to the Roses.

With regard to the $70,000 indebtedness, the trial court's factual findings are inconsistent, at one point concluding that Emil Rose made the loan to Churchill's in order to repay a loan owed to a diamond broker in an effort to meet the requirements of acquiring AMS and, at another point, concluding that the $70,000 was a personal loan made by Emil Rose to David Rose for this purpose. Whether David Rose or Churchill's actually owed the $70,000 is not clear from the trial

record. The only thing clear from Emil Rose's testimony is that he loaned $70,000 to David Rose to pay a preexisting debt owed to a diamond broker. Although the loan was related to the AMS transaction in the sense that David Rose may not have borrowed the money from his father but for his interest in acquiring AMS, the underlying indebtedness of $70,000 was not incurred based on the 1975 10-K report and, thus, just as in the SBA transaction, there was no act of justified reliance for which Touche Ross could have been held legally responsible. All David Rose did was shift liability from one creditor to another. Accordingly, we hold that the trial court clearly erred in awarding $70,000 to the Roses. Because the Roses were also awarded interest on the $120,000 loan owed to Emil Rose, we also reverse the interest on the $70,000 portion of the indebtedness for a total reduction of $105,280.[6]

Finally, Stockler claimed that the trial court erred in awarding $233,000 to David Rose. The trial court based the award on David Rose's testimony that he assumed the chairmanship of GBI at an annual salary of $90,000 and that his salary decreased to $50,000 for forty-three months upon GBI's filing bankruptcy, and David Rose's unrebutted testimony that he could not find work for one year after GBI was liquidated. The trial court also found that David Rose was "forced" to stay with GBI during bankruptcy as a result of his personal guarantees.

Although both lost wages and the loss of earning capacity are recognized items of damages, *Nawrocki v Hawkeye Security Ins Co,* 83 Mich App 135, 140-141; 268 NW2d 317 (1978), lv den 406

---

[6] The Roses were awarded interest of $60,480 on the $120,000 loan owed to Emil Rose. The share of this interest attributed to the $70,000 indebtedness is 58.3 percent or $35,280.

Mich 896 (1979), we agree with Stockler's argument that the proofs in this case, even if unrebutted, were too speculative to allow a recovery. GBI was a corporation operated and owned by David Rose. Aside from David Rose's opinion, there was no evidence on the reasonableness of the $90,000 salary David Rose claimed was initially to be paid by GBI or the reasonableness of his salary as chief operating officer upon GBI's filing for bankruptcy. At best, David Rose's testimony reasonably implied that his salary expectation was injured. For reasons to be discussed *infra,* David Rose was not entitled to a recovery for injuries to his financial expectations. Further, there was no evidence that David Rose had any contractual obligation to remain with GBI as an employee or was otherwise "forced" to stay. The record indicates only that David Rose chose to stay with GBI because of the substantial business risks he undertook in deciding to personally guarantee millions of dollars of loans to GBI. One must keep in mind that the only decision that the trial court found that David Rose made based on Touche Ross' representations in the 1975 10-K report was to incorporate and finance GBI for purposes of purchasing AMS. Although the fact that the Roses decided to personally guarantee loans as a means of acquiring funds for GBI may have been a reasonably foreseeable consequence of Touche Ross' negligence, David Rose's employment decision was a separate matter that was not a foreseeable or natural consequence of the financing transaction.

We, therefore, conclude that the proofs on the salary item of damages were speculative and that the relationship between David Rose's employment and the financing transaction too remote to hold Touche Ross legally responsible. As noted in *Moning, supra,* p 440, quoting Prosser, Torts (4th ed),

§ 42, p 244, the question of proximate causation is "essentially a problem of law." Where, as here, no factual question was presented upon which reasonable minds may differ as to whether the "breaches of duty were not the cause of plaintiffs' [the Roses'] injuries or were too insignificantly connected to or too remotely affected by defendant's [Touche Ross'] breaches of duty," we conclude, as a matter of law, that Touche Ross' negligent representations were not a proximate cause of David Rose's injury, *Mills v White Castle System, Inc,* 167 Mich App 202, 209; 421 NW2d 631 (1988).

To summarize, we conclude that the trial court clearly erred in awarding the following items of damages totaling $593,471.41: (1) $240,191.41 for the preexisting SBA loan guaranteed by the Roses; (2) $15,000 for legal fees related to litigation on the SBA loan; (3) $105,280 for interest and a loan made by Emil Rose to David Rose to repay a diamond broker; and (4) $233,000 for a decrease in David Rose's salary expectation. We find no clear error in the trial court's finding that the Roses may recover $75,200 for the interest and loan made by Emil Rose to David Rose for his capital investment in GBI. The remaining damages of $93,000 have not been challenged and, thus, have not been reviewed. These damages include a debt of $6,000 and various payments made by David Rose totalling $87,000.

### E. THE ROSES' OBJECTIONS TO DAMAGES

In their cross-appeal, the Roses raise three issues relating to the question of damages. Pursuant to the suit within a suit concept, the Roses first contend that the trial court erred in refusing to award statutory prejudgment interest, MCL 600.6013; MSA 27A.6013, as an element of dam-

ages on the amount they could have recovered from Touche Ross in the underlying lawsuit from the date they filed the Touche Ross complaint on December 15, 1978, to the date the suit was dismissed on September 8, 1982. We disagree.

The suit within a suit concept is of limited utility in a legal malpractice action. The concept provides a means of assessing damages suffered by the client which were a proximate cause of the attorney's malpractice. Although it is arguable that the Roses should be allowed to recover prejudgment interest inasmuch as the trial court found that the Roses would have succeeded in their lawsuit against Touche Ross had the lawsuit not been dismissed and MCL 600.6013; MSA 27A.6013 serves a compensatory purpose for the delay in receiving money damages, there can be no recovery of interest unless authorized by the statute. *In re Irwin Estate,* 162 Mich App 522, 532; 413 NW2d 37 (1987). MCL 600.6013; MSA 27A.6013 allows "interest on a money judgment recovered in a civil action." The Roses did not recover a money judgment against Touche Ross and, hence, cannot recover statutory interest as an element of damages even under the suit within a suit concept.

The Roses also contend that the trial court erred by refusing to pierce the corporate veil and to award the Roses the benefit of their bargain as damages, i.e., the difference between the value of certain AMS assets purchased by GBI and the value of the assets represented by Touche Ross. Since piercing the corporate veil is an equitable principle, our review is de novo. See *Kline v Kline,* 104 Mich App 700, 703; 305 NW2d 297 (1981); *Meyering, supra,* p 701. Nevertheless, the decision will not be reversed unless the factual findings are clearly erroneous or the reviewing court is con-

vinced that it would have reached a different result had it occupied the trial court's position. *Meyering, supra; Vergote v K mart Corp (After Remand),* 158 Mich App 96, 103; 404 NW2d 711 (1987).

In the present case, the Roses sought the advantages of the corporate vehicle as a means of acquiring AMS and now seek to disregard that corporate entity for the limited purpose of obtaining the benefit of their bargain. Under these circumstances, we do not believe that equitable principles justify piercing the corporate veil and, thus, affirm the trial court. Compare *Williams v American Title Ins Co,* 83 Mich App 686; 269 NW2d 481 (1978). Even if the corporate veil were pierced, we do not believe that the Roses could recover benefit of the bargain damages since, standing in the shoes of GBI, they would still stand as a third party to the contract between AMS and Touche Ross. For this limited purpose, we agree with the position in Restatement Torts, 2d, § 552B that an injured person is not entitled to recover the loss of his bargain for a mere negligent misrepresentation and that the proper measure of damages is the amount necessary to compensate the injured person for the pecuniary loss (i.e. out-of-pocket loss) suffered in reliance upon the misrepresentation.

Finally, the Roses contend that the trial court erred in ruling during the course of the trial that they could not present evidence on the issue of exemplary damages because the pleadings were lacking in this area. The Roses argue that their allegations in their counterclaim that Stockler breached his duties recklessly, along with their general ad damnum clause seeking exemplary damages, was sufficient to support an award for exemplary damages.

There was no finding of recklessness in this case and, hence, a remand for evidence of exemplary damages would appear to serve no purpose. Negligence is not sufficient to justify an award of exemplary damages. *Veselenak v Smith,* 414 Mich 567, 575; 327 NW2d 261 (1982). In any event, the purpose of exemplary damages is to compensate for injury to feelings so as to render the plaintiff whole. *Jackson Printing Co, Inc v Mitan,* 169 Mich 334; 425 NW2d 791 (1988). The defendants' conduct must inspire feelings of humiliation, outrage and indignation. *Veselenak, supra,* p 574. When compensatory damages can make an injured person whole, exemplary damages have not been allowed. *Hayes-Albion Corp v Kuberski,* 421 Mich 170, 187; 364 NW2d 609 (1984).

The Roses in this case alleged no injury to feelings caused by Stockler's act of filing the deficient interrogatories. Nor can it be said that an injury to feelings would naturally flow from Stockler's act, particularly when viewed in the context of the financial losses claimed by the Roses as a result of Touche Ross' negligence. Under these circumstances, we conclude that the Roses were required to specifically plead the items of exemplary damages they sought as special damages and, having failed to do so, the trial court correctly ruled not to admit proofs on exemplary damages. See GCR 1963, 112.8, now MCR 2.112(I); *Van Pembrook v Zero Manufacturing Co,* 146 Mich App 87, 107; 380 NW2d 60 (1985), lv den 425 Mich 857 (1986); *Bourke v Warren,* 118 Mich App 694, 699; 325 NW2d 541 (1982).

### III

#### THE HAMMOND ORGAN CASE

##### A. FACTS

The Roses' malpractice claim against Stockler in

the Hammond Organ case stemmed from his mishandling of a writ of garnishment served on Sydney Rose by Hammond Organ in July, 1982. Hammond Organ was a vendor of GBI who had successfully received a judgment against David Rose for about $721,000 on his personal guarantee. Unlike some of the other indebtedness owed by GBI, it appears that Sydney Rose was not a joint guarantor with David Rose on the Hammond Organ indebtedness. However, Hammond Organ twice served Sydney Rose with a writ of garnishment to determine whether she was holding any assets of her husband, David Rose, that could be reached to pay the judgment. In response to the first writ of garnishment, Stockler, who agreed to represent Sydney Rose in this matter, properly filed a sworn disclosure of assets on behalf of Sydney Rose in April, 1982. On July 16, 1982, Hammond Organ served Sydney Rose with the second writ of garnishment. Sydney Rose mailed this writ to Stockler, but a sworn disclosure of assets was never filed by Stockler.

In the fall of 1982, Hammond Organ entered a default against Sydney Rose in Wayne Circuit Court based on her failure to file the sworn disclosure of assets. Stockler at that time informed the court that he had filed the necessary disclosure, but claimed that it was not yet in the court file. Accordingly, Judge Bowman adjourned the hearing on Hammond Organ's motion for a default judgment to give Stockler an opportunity to find the disclosure he claimed was filed. It was during this adjournment that the attorney-client relationship between Mr. and Mrs. Rose and Stockler broke down and Mrs. Rose (Sydney) retained Hudnut to represent her in the Hammond Organ matter. On December 11, 1982, a default judgment was entered against Sydney Rose because Stockler

in fact had not filed the required sworn disclosure. Hudnut moved on behalf of Sydney Rose to set aside the default judgment and, in the latter part of December, 1982, Hammond Organ took the deposition of Sydney Rose.

An evidentiary hearing on the motion was held on April 26, 1983, and on December 16, 1983, Judge Bowman entered an opinion refusing to set aside the default judgment, stating:

> In this case, the Defendant [Sydney Rose]'s deposition and the fact of her refusal to answer certain questions indicates that Garnishee Defendant may have money, goods, chattel or property of the Principal Defendant, David Rose. Garnishee Defendant fails to cite facts to come within the authority of GCR 1963, 528(3) granting relief from a Judgment.
>
> Where a Default Judgment is properly entered, and where the Garnishee Defendant may have assets or property belonging to the Principal Defendant, the Court shouldn't set aside a properly-entered Judgment for the alleged negligence of her attorney [Stockler].

On May 17, 1984, the Roses settled with Hammond Organ for a joint and several liability of $150,000 on the $721,000 judgment entered against the Roses, individually. The agreement provided that $40,000 was payable forthwith, and the balance in four annual installments commencing May 15, 1985.

In reviewing the Roses' malpractice claim in the instant case, the trial court found that Stockler was professionally negligent in his failure to file the required disclosure document that resulted in the default judgment and that Stockler's negligence was the proximate cause of David Rose's *sole* obligation to pay the debt becoming the Roses'

*joint* obligation to pay the $150,000 settlement to Hammond Organ. With regard to Stockler's third-party complaint against Hudnut for indemnity or contribution, the court found that Stockler failed in his burden of proof.

### B. *SYDNEY ROSE V STOCKLER*

On appeal, Stockler contends that the trial court erred in ruling that the Roses were not required to present expert testimony to establish that he was professionally negligent in his representation of Sydney Rose. Stockler contends that expert testimony was required to pull all of the events of the Hammond Organ case together in a meaningful manner. We disagree.

Expert testimony may be admitted if it will be useful in understanding the evidence or to "determine a fact in issue." MRE 702. In a malpractice action, expert testimony is usually required to establish a standard of conduct, breach of that standard of conduct, and causation. *Thomas v McPherson Community Health Center,* 155 Mich App 700, 705; 400 NW2d 629 (1986). Where the absence of professional care is so manifest that within the common knowledge and experience of an ordinary layman it can be said that the defendant was careless, a plaintiff can maintain a malpractice action without offering expert testimony. *Joos v Auto-Owners Ins Co,* 94 Mich App 419, 422-424; 288 NW2d 443 (1979), lv den 408 Mich 946 (1980).

Here, Stockler's professional negligence was based on his failure to file a disclosure document required by court rule and the resulting default judgment. Stockler admitted that he was aware that the failure to respond to a writ of garnishment would entitle Hammond Organ to take the

default of his client. There was also evidence that Stockler at one point claimed in an affidavit and testified that he filed the required disclosure, but later concluded that he was in error. Judge Bowman, in fact, entered the default judgment because the disclosure document was not filed. Under facts such as these, ordinary laymen could easily recognize that Stockler's failure to file the disclosure document was a breach of the professional standard of care. Although we also conclude that expert testimony was not necessary for the Roses to establish a causal connection between Stockler's negligence and their damages, including the foreseeability that the default judgment would not be set aside, we find merit in the point raised by Stockler pertaining to whether Sydney Rose suffered damages inasmuch as David Rose also benefitted from the settlement with Hammond Organ for $150,000.

Trial evidence revealed that David Rose considered himself uncollectible on the $721,000 judgment entered in favor of Hammond Organ on his personal guarantee and it is clear that Hammond Organ was looking for assets belonging to David Rose that it could subject to garnishment. As a representative of both Mr. and Mrs. Rose, Stockler had a duty throughout the garnishment proceedings to use reasonable care to protect their joint assets and Mrs. Rose's individual assets. An ordinary layman could conclude under facts such as these that the exposure of their joint assets to repay the judgment as a result of the default judgment against Sydney Rose was causally connected to Stockler's negligence and that Stockler's negligence was a proximate cause of this exposure. Nevertheless, the only damages proximately caused by Stockler's negligence were repayments that did or will come from joint assets or Mrs.

Rose's assets. It is the nature of the repayment, and not the fact that the obligation must be repaid, that justifies holding Stockler legally responsible in the Hammond Organ case. Because David Rose's individual liability on the judgment was not caused by Stockler's negligence, any payment made by David Rose that did not require joint assets or Mrs. Rose's individual assets, e.g., David Rose's wages, was not causally connected to Stockler's negligence. Accordingly, we are left with a definite and firm conviction that the trial court erred in awarding the full obligation of $150,000 that the Roses agreed to pay to Hammond Organ. Further, since the trial court ruled during the course of the trial that the manner in which the $150,000 was paid lacked relevancy, we find it necessary to remand to the trial court for the limited purpose of holding an evidentiary hearing, if deemed necessary, and to make factual findings on the amount of the debt that did or will require payment out of joint assets. Since Mrs. Rose was not originally liable to Hammond Organ, Stockler would also be liable to her to the extent that her individual assets may be required to satisfy the debt. This too is a matter of inquiry on remand.

### C. *STOCKLER V HUDNUT*

With regard to Stockler's claim that the trial court erred in finding no cause of action on his third-party complaint against Hudnut for indemnification or contribution, we find no error. Since Stockler's claim was based on Hudnut's alleged legal malpractice in failing to set aside the default judgment, it was necessary for Stockler to prove the four elements of legal malpractice set forth in *Basic Food, supra* (Section II of this opinion). Stockler's claim of professional negligence against

Hudnut was twofold: (1) that Hudnut failed to submit a properly notarized affidavit of meritorious defense with the motion to set aside the default judgment; and (2) that Hudnut advised and instructed Sydney Rose not to answer certain questions during her deposition testimony.

With regard to Stockler's first basis, the trial court found that Hudnut was professionally negligent in filing Sydney Rose's affidavit without the proper notarization, a requirement of then existing GCR 1963, 528.3 and 520.4, but that

> [i]nasmuch [as] Stockler has failed to demonstrate, by a preponderance of the evidence, a causal relationship between Judge Bowman's decision denying [the] Motion to Set Aside the Default and Hudnut's negligence, the Third-Party claim must fail.

We agree with the trial court. The fact that Hudnut failed to file a notarized affidavit, even if negligent, was not relevant since there is nothing in the record to indicate that Judge Bowman relied on this omission as a reason for denying Hudnut's motion to set aside the default judgment. Judge Bowman made specific reference to Sydney Rose's deposition testimony in his opinion and, thus, if Stockler is to succeed at all in his claim against Hudnut it will have to be on his second basis.

With regard to Stockler's second basis, the trial court ruled:

> However, with respect to the alleged breach of duty concerning Hudnut's advice and instructions to Sydney Rose at the December 28, 1982 deposition, the Court finds that expert testimony regarding the standard of care was necessary. Stockler failed to present expert testimony on this issue.

We agree with the trial court. At the deposition hearing, Hudnut objected on relevancy grounds and instructed Sydney Rose not to answer questions pertaining to the source of funds of a trust fund and bank account and whether David Rose transferred stock of the bankrupt GBI to Sydney Rose in 1978. Instructing a client not to answer deposition questions is risky since, even if based on a valid evidentiary objection, then applicable GCR 1963, 306.3(4) provided that evidence objected to shall be taken subject to the objection. Sanctions, including an order to compel an answer, GCR 1963, 313.1(1), were possible. Here, Hammond Organ did not obtain an order compelling answers, but rather followed a different strategy by successfully using Sydney Rose's failure to answer questions to show why the default judgment should not be set aside. How Hudnut's professional conduct during the deposition should be viewed in light of Hammond Organ's strategy, as well as the standard of conduct applicable to Hudnut's discovery strategy, were matters outside the common knowledge and experience of ordinary laymen. Accordingly, we find no error in the trial court's conclusion that expert testimony was necessary. Since Stockler did not present expert testimony on this issue, we affirm the judgment of no cause of action in favor of Hudnut.

#### D. THE ROSES' CROSS-APPEAL

The Roses raise one issue pertaining to the damages of $150,000. They claim that the trial court erred in refusing to allow proofs of exemplary damages. For the reasons discussed in Section II of this opinion regarding the exemplary damages sought in the Touche Ross case, we conclude that the trial court's ruling not to allow

proofs of exemplary damages was correct. The pleadings on exemplary damages were inadequate to establish such a claim.

### IV

#### STOCKLER'S COMPLAINT FOR SERVICES RENDERED

The underlying facts are as follows. Stockler's original complaint to recover legal fees from various matters where he served as legal counsel was filed in December, 1982. Pursuant to MCL 600.2145; MSA 27A.2145, Stockler annexed an affidavit on open account in the amount of $122,823.06. In April, 1983, the Roses filed an answer to the complaint wherein they admitted that some services were rendered but denied Stockler's other allegations and the alleged value of Stockler's services. In August, 1983, the Roses filed their legal malpractice counterclaim against Stockler, and Stockler responded by successfully moving to file an amended complaint adding a third-party complaint against Hudnut. Both prior to trial and during the course of the trial, Stockler raised procedural and evidentiary issues on whether the Roses were liable for the full amount stated in his affidavit on open account.

Relying on MCL 600.2145; MSA 27A.2145, the trial court ruled that Stockler's affidavit on open account was prima facie evidence of indebtedness and that the burden of going forward with the evidence had shifted to the Roses because the Roses did not file the requisite counteraffidavit. The trial court awarded Stockler $13,727.98 in fees. Stockler appeals.

We do not address Stockler's claim that his pretrial motion for summary judgment based on the Roses' alleged admissions and the lack of valid defenses to his complaint should have been

granted since the record indicates that no order pertaining to the motion was entered. At the time the motion was filed in 1983, the circuit court judge who presided over the trial was not presiding over the instant case. Although it appears that the circuit court judge presented with the motion ruled on the motion from the bench, no signed order was filed. At the pretrial hearing on October 21, 1985, before the trial judge, Stockler conceded this fact. A court speaks through its orders, and the jurisdiction of this Court is confined to judgments and orders. *McNary v City of Taylor,* 41 Mich App 556, 558; 200 NW2d 772 (1972), lv den 389 Mich 756 (1972), and see MCR 7.203. Accordingly, we limit our review to the questions presented to and decided by the trial judge during the course of the trial.

Stockler contends that the trial court erred in denying his October 21, 1985, motion for a default judgment based on the Roses' failure to file an answer to his first amended complaint. We disagree. Aside from going into greater factual detail, Stockler's first amended complaint alleged the same causes of action against the Roses as in the original complaint. The Roses' answer and counterclaim effectively denied the allegations in the first amended complaint. Under GCR 1963, 118.2, the court rule in effect when the first amended complaint was filed, a party was not required to file a new answer to an amended complaint where they had already filed an answer to the original complaint. *Haefele v Meijer, Inc,* 165 Mich App 485, 495; 418 NW2d 900 (1987), remanded on other grounds 431 Mich 853 (1988). The Roses were not in default and, thus, the trial court did not abuse its discretion in ruling not to enter the default judgment. 165 Mich App 495.

Stockler also contests the amount of damages,

specifically claiming that he was entitled to damages of $4,938.50 for his legal services in representing the Roses in the Touche Ross case discussed in Section II of this opinion and $100,000 for his services in another legal matter (hereafter referred to as the Irving August matter). Both of these amounts were included in the $122,823.06 amount claimed by Stockler in his affidavit on open account. Stockler contends that the trial court erred in finding that the Roses met their burden to rebut his prima facie evidence of this indebtedness. We disagree.

Trial evidence revealed that Stockler agreed to represent the Roses in both of these matters on a contingency fee basis. Relying on *Ambrose v The Detroit Edison Co,* 65 Mich App 484; 237 NW2d 520 (1975), Stockler contends that he was entitled to recover in quantum meruit despite the contingency fee arrangement because the Roses failed to cooperate with him in the Touche Ross matter and he was induced to work on the Irving August matter through David Rose's fraud and misrepresentations.[7] Stockler further argues that David Rose agreed to pay the $4,938.50 charge in the Touche Ross case.

There was, however, conflicting evidence on what caused the breakdown between the attorney-client relationship of Stockler and the Roses, and David Rose testified that he did not agree to pay

[7] The Irving August matter was a legal malpractice action. The trial record does not indicate any evidence of fraud or misrepresentation by David Rose which induced Stockler to take the case on a contingent basis. Stockler testified that he withdrew from the case due to a complete breakdown in the attorney-client relationship, and that one of the events which led to the breakdown was David Rose's admission to Stockler that he pilfered documents from the office of one of the attorneys being sued. The Roses contend on appeal that Stockler failed to prove fraud. The trial court did not make any findings on fraud but rather concluded that "Stockler failed to prove that Rose did not cooperate with him with respect to the various legal matters . . . ."

$4,938.50. Giving due deference to the trial court's superior vantage point to judge the credibility of the witnesses, we cannot say that the trial court's factual findings were clearly erroneous. There was enough evidence for the court to find that the Roses met their burden of going forward with the evidence to rebut Stockler's prima facie proof of indebtedness and that the Roses' conduct did not preclude enforcement of the contingency fee agreement. Accordingly, we affirm the award of $13,727.98 in favor of Stockler.

Finally, Stockler seeks a dismissal of the Roses' counterclaim for legal malpractice, arguing that the Roses are not entitled to a setoff for the legal fees because the legal services were performed by individual attorney Stockler rather than plaintiff, Stockler's professional corporation. Since this issue was not raised in the trial court, we do not address it. *Napier v Jacobs*, 429 Mich 222, 227-228; 414 NW2d 862 (1987).

V

CONCLUSION

To summarize, we affirm the three judgments rendered by the trial court but modify the award of $1,332,066 in favor of the Roses on their legal malpractice counterclaim as follows. First, we reduce the damages in the Touche Ross case by $593,471.41 plus the applicable statutory interest. Secondly, we remand for an evidentiary hearing, if deemed necessary, and a decision on the amount of the $150,000 award in the Hammond Organ case that did or will require payment out of joint assets or the individual assets of Mrs. Rose. Following that decision, a modified judgment consistent with this opinion should be entered.

Affirmed in part, modified in part and remanded

for further proceedings. Jurisdiction is not re-
tained.